**GILLESPIE et al. v. DOUGHERTY et al.**

No. 26948.   Feb. 16, 1937.

Rehearing Denied March 9, 1937.

Creekmore Wallace and Don Anderson, for plaintiffs in error.

M. W. Pugh and Johnson, McGill & Johnson, for defendants in error.

PER CURIAM. This action was begun in the district court of Carter county, Okla., on January 29, 1935, by the filing of petition by F. M. Dougherty et al. against C. J. Gillespie et al. in which plaintiffs sought judgment quieting title in plaintiffs to certain lands in Carter county, Okla., and prayed damages against the defendants on account of their alleged wrongful acts in recording a certain assignment of an interest in an oil and gas lease upon said lands. The plaintiffs F. M. Dougherty, G. D. Houston, John Alexander, W. B. Johnson, and H. W. McGill allege that they are the owners in fee of the lands involved here, and the title of these plaintiffs to the land is not questioned in the litigation. The plaintiff L. F. Jones claims to be the owner of a lease upon a small portion of the land involved, and no question is raised as to his title. The remaining plaintiffs, F. W. McHenry, H. W. Chamberlain, Julia A. Koutsky, J. R. Kyle, and Willa N. McHenry, claim to hold the lands involved here under an oil and gas lease executed by the fee owners. The defendants, C. J. Gillespie and R. A. Steinfad, claim an interest in an oil and gas lease upon the lands involved by virtue of a contract executed by the plaintiffs, the fee owners, to intervener, Pickle. The intervener, Pickle, claims that this contract was made with him, and defendants, Gillespie and Steinfad, claim their interest through assignment from Pickle. The plaintiffs deny that the defendants and the intervener, Pickle, have any right or interest in the land, and this by reason of the fact that intervener, Pickle, failed to perform his contract and abandoned the premises. The fee owners leased to the remaining plaintiffs, but the defendant Steinfad filed of record an alleged assignment of an interest in the Pickle contract, and this assignment, being of record, constituted a cloud upon the title of the fee owners and the title of plaintiffs, leaseholders. Plaintiffs, in their suit, sought to quiet title in themselves and to remove this cloud. Judgment quieting title in plaintiffs was rendered by the trial court, but the prayer of plaintiffs for damages on account of the alleged clouding of the title was denied. Defendants and intervener filed their motion for new trial, which was overruled, notice of appeal was duly given, and the case is now here for review of the judgment rendered by the trial court.

Plaintiffs in error set out numerous specifications of error, but they have, as we think, properly stated the sole question at issue here, which is simply whether intervener, Pickle, so far complied with his contract made with the fee owners as to entitle him to an oil and gas lease upon the lands described in plaintiffs' petition.

There is no question that the fee owners executed an oil and gas lease to F. W. McHenry, who in turn assigned to Chamberlain, Koutsky, Kyle, and Willa N. McHenry. It is undisputed that these parties, proceeding under the lease from the fee owners, drilled oil and gas wells upon the lands and had obtained production prior to the time this cause was tried. The lease to McHenry was granted about September 17, 1934. Prior to this time and on the first day of August, the fee owners, through W. B. Johnson, entered into an agreement with J. F. Pickle, which was as follows:

"Johnson, McGill & Johnson
"Attorneys at Law
"Ardmore, Oklahoma
"August 1, 1934.

"Mr. J. F. Pickle

"Dear Sir:

"With reference to an oil and gas lease on the ninety five acres of land we spoke to you about in the Hewitt Field in Section 17, Township 4 South, Range 2 West, we will agree, if you will begin to drill a well within thirty days from this date, to deliver you a lease covering same, which has been shown to you, and which you thoroughly understand. The title to said property is clear and is vested in the parties who signed said lease. No one has any claim thereon.

"It is expressly understood that you are to begin drilling this well within thirty days from this date otherwise this agreement is to be null and void, and that this agreement is made with you with the express understanding that it is subject to all the conditions and requirements of the lease now in our possession.

"You are at liberty to drill a water well anywhere you like on our premises, except on the ten acres reserved for the Jones well.

"Yours truly,
"W. B. Johnson.

"WBJ:NB"

Prior to the time when this agreement to lease was made, Pickle, with the expectation that he was to have such a lease, assigned an interest therein to C. J. Gillespie, and C. J. Gillespie in turn assigned an interest to R. A. Steinfad. The title of Gillespie and Steinfad must be derived through Pickle.

It is claimed by Pickle that he did enough work on the premises to fulfill the terms of his contract, which were "To begin drilling this well within 30 days from this date." The fee owners and the lessees in possession claim that Pickle failed to comply with his contract, and that, in fact, he abandoned his contract prior to the time when the lease was made to McHenry. The question, therefore, seems to be solely one of fact as to whether the contract of August 1st was fulfilled by Pickle so as to entitle him to possession of the land as against the subsequent lessees, who have drilled and are producing. The trial court heard the evidence and at its conclusion found the facts and the law in favor of the plaintiffs and adjudged that title should be quieted in them, but holding that no damage had been shown, as prayed for in plaintiffs' petition.

In reviewing this judgment, we find ourselves bound by the rule so often laid down by this court, which is that the judgment of the trial court as to questions of fact in equity cases will not be disturbed nor set aside unless such judgment is against the clear weight of the evidence.

In the case of Wagg v. Herbert, 19 Okla. 525, 92 P. 250, it is said at page 557:

"It is a settled rule of this court, and one which we have reiterated and reiterated time and again, that where the evidence reasonably sustains the finding and judgment of the court, or where the evidence is conflicting, it will not be disturbed by this court."

This rule has been uniformly followed in the later decisions of our court. In Magnolia Petroleum Co. v. Wright, 159 Okla. 198, 14 P. (2d) 940, this court held:

"The general rule is that, in cases of that kind, the findings of the trial court will not be disturbed where the evidence is conflicting, as it was in this case, and is not overwhelming for the other side."

In Wheeler v. American Investment Co., 167 Ok'a. 558, 31 P. (2d) 117, the 4th paragraph of the syllabus lays down the rule with clarity, and the statement is as follows:

"In a case of purely equitable cognizance, this court will examine and weigh the evidence, but the findings and judgment of the trial court will not be disturbed on appeal to this court, unless it appears that such findings and judgment are against the clear weight of the evidence."

In Webber v. Sandridge, 151 Okla. 112, 2 P. (2d) 959, it is said:

"Where the testimony is oral and conflicting, and the finding of the court is general, such finding is a finding of every special thing necessary to be found to sustain the general finding, and is conclusive upon this court upon all doubtful and disputed questions of fact."

The judgment of the trial court was general, and the court found the issues in favor of the plaintiffs and against the defendants and intervener. The court found the plaintiffs F. M. Dougherty, G. D. Houston, John Alexander, W. B. Johnson, and H. W. McGill to be the legal owners in fee simple of the lands involved and that they were in the actual and peaceful possession of the same; that their title to said premises should be quieted against the defendants and intervener. The court further finds that the remaining plaintiffs are the owners of an oil and gas lease upon the premises involved, except the ten acres upon which L. F. Jones has an oil and gas lease, and that the title of said plaintiffs should be quieted against the defendants and intervener, and said defendants and intervener should be perpetually enjoined from claiming or asserting any interest in said oil and gas lease. The court further finds that the assignment of oil and gas lease from defendant C. J. Gillespie to defendant R. A. Steinfad should be canceled and held for naught.

Upon these findings of fact, the court rendered its general judgment, quieting title in the fee owners and the leaseholders, plaintiffs herein.

As hereinbefore stated, the title to the ten-acre lease of L. F. Jones is not in controversy. It becomes our duty, therefore, to examine the testimony and determine whether the judgment of the trial court is clearly against the weight of the evidence.

The evidence discloses that on or about the 20th day of July, 1934, the intervener, J. F. Pickle, had some preliminary conversation with plaintiff W. B. Johnson touching an oil and gas lease upon the premises involved. It is in evidence that J. F. Pickle was not in financial condition to drill a well upon the premises, but that it was his expectation that he would be able to obtain such financial assistance as was necessary in this regard. The preliminary negotiations were merged into the agreement hereinabove set out. The question of fact is whether Pickle began to drill a well within the time limited. There is no contention that Pickle actually began work upon the oil and gas well within the time limited by Johnson's contract. But prior to the expiration of the time, Pickle had, by his employees, performed

certain labor upon the lease as a preparation for the drilling of the oil and gas well. He had dug a slush pit and a water well, which well was dry, and there is evidence that he had moved some material on to the land. Plaintiffs in error insist that the performance of this labor and the doing of these acts was sufficient, under the holding of this court, to constitute "beginning to drill a well." Up to this point in the testimony, there is little, if any, conflict between the parties. Plaintiffs in error cite numerous cases from other states defining the things necessary to be done to constitute a beginning to drill an oil and gas well. We deem it unnecessary to discuss or review these decisions of other states in view of the fact that our own court has laid down the rule in several cases, and the rule as so laid must be applied here.

The first case is that of Cromwell v. Lewis, 98 Okla. 53, 223 P. 671. In this case, Eula M. Lewis executed an oil and gas lease upon her land and delivered same to G. K. Jenkins to be held by him in escrow, to be delivered upon the commencement of the drilling of a test well upon the land. An extension of time to begin this drilling was granted and there was some change made in the lease. The extension agreement recited that "the time for beginning a test well, as provided in the contract hereto attached, is hereby extended until July 1, 1922." In that case, plaintiffs in error had, prior to the expiration date, located a well, dug a cellar or basement, had 15 or 18 loads of timber on the location for the purpose of constructing the derrick, had other material on the way, and were moving with all reasonable celerity in an effort to speed up the well, and before the case was tried, plaintiffs in error had drilled the well to a depth of 3,400 feet and struck gas in paying quantities.

The trial court refused to order the delivery of the lease, which had been placed in escrow. This court reversed the judgment of the trial court and held that the actions of plaintiffs in error constituted the beginning of a test well. It will be noted that plaintiffs in error had not only done the preliminary acts, but they continued to move with all proper speed and completed the well and were producing gas in paying quantities at the time of the trial. This court says on page 55 of its opinion in the Oklahoma Reports:

"We think that on the 1st day of July, 1922, the plaintiffs had fully performed their part of the agreement, that is, had in good faith begun a test well as contemplated by said extension agreement. And this conclusion is evidenced by the fact that the plaintiffs actually did promptly complete the well."

In the case at bar, Pickle did not complete the well and never did any further work than as hereinbefore set out.

The case of Smith v. Gypsy Oil Co., 130 Okla. 135, 265 P. 647, again defines the meaning of the term "commence to drill a well." In that case, the lease expired on September 14, 1925, unless "the lessee shall commence to drill a well within the terms of this lease." Prior to the expiration date, location was made, and construction of the drilling rig was begun and completed on September 12th. On September 12th, they drilled a water well, but the actual drilling of the oil and gas well did not commence until September 20th. Active operations, however, were carried on from September 7th to October 27th, upon which last named date oil was discovered, and on October 28th the well was completed as a producer. It will be noted in this case again that the lessee began operations prior to the expiration date and continued the same with due dispatch until oil was produced, and the first paragraph of the syllabus links the two ideas of a beginning of work before the expiration date and the continuance in good faith and a completion with diligence and dispatch.

The next case cited by plaintiffs in error is that of Aldridge v. Gypsy Oil Co., 132 Okla. 13, 268 P. 1109. In this case, the same rule is announced as was announced in Smith v. Gypsy Oil Co., supra, and the continuance of the work and the completion with due diligence is made a factor.

Plaintiffs in error here have not shown such diligence as was shown in the cases above cited. At the time of the expiration of his contract, Pickle had placed no machinery, nor derrick upon the lease, nor did he do any further work after the expiration of his time. The question of good faith on the part of the lessee, Pickle, was considered by the court. While Pickle had done some work upon the lease, it is in evidence that he had failed to pay for the digging of the slush pit, and when plaintiff Hamilton, one of the subsequent lessees, went upon the land, he found the parties who dug the slush pit holding the same for the amount due them on account of their labor. The evidence shows that Pickle had given checks for this labor, which had not been paid, and that Hamilton paid these checks.

There is conflict in the evidence upon one matter occurring just prior to the expiration date of Pickle's lease. Plaintiffs' testimony is that Pickle called on Johnson about the last day of August in regard to his lease, and that Johnson asked him if he had got the well started; he said "no." He said that he had no engines there and no rig up and water well was dry; that Pickle asked for an extension of time. Johnson said he would not grant this extension. Pickle asked if it was all off then, and Johnson said, "I guess so." Pickle started out of the room, when Johnson asked him where the abstract was. Pickle went out and brought the abstract and left and did not come back again.

On the other hand, the testimony of Pickle is that he saw Johnson about the last of August and asked him for an extension of time; that he did not say that he was through with the contract, but told Johnson there would be litigation if he tried to take the lease away; that he brought the abstract back because Roy Johnson had another one brought down to date. Pickle further testifies that he did not pay for the slush pit, nor the water well casing, and did not know what became of it, but that he paid out a lot of money on the lease besides the hot check. The court, by its general finding, accepted Johnson's version. The evidence shows that the subsequent lessees proceeded with their development work and expended a large amount of money in the drilling of two wells, reaching production in paying quantities.

Under the facts as shown by the record, we are of opinion that the findings of fact and the judgment of the trial court are not against the clear weight of the evidence, but are sustained by the evidence, and the judgment of the trial court is in all things affirmed.

The Supreme Court acknowledges the aid of Attorneys J. H. Gordon, Frank D. McSherry and Chas. H. Hudson in the preparation of this opinion. These attorneys constituted an advisory committee selected by the State Bar, appointed by the Judicial Council, and approved by the Supreme Court. After the analysis of law and facts was prepared by Mr. Gordon and approved by Mr. McSherry and Mr. Hudson, the cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration by a majority of the court, this opinion was adopted.

BAYLESS, V. C. J., and BUSBY, PHELPS, CORN, and GIBSON, JJ., concur.