Roy MORRIS et al., Plaintiffs in Error,

v.

Edith N. WELLS and George T. Ellis, individually, and also in his official capacity as Administrator with Will Annexed of the Estate of Joseph E. Crawford, deceased, Defendants in Error.

No. 39909.

Supreme Court of Oklahoma.

May 14, 1963.

Brown, Brown and Brown, McAlester, Ellis M. Brown and Donald R. Hackler, McAlester, of counsel, for plaintiffs in error.

John F. Hudson Stigler and Woodrow McConnell, Oklahoma City, for defendants in error.

JACKSON, Justice.

The plaintiff in the trial court, Edith N. Wells, brought this action to quiet her alleged title to 92 acres of land. Her claim of ownership is based upon title by prescription by virtue of over twenty years of adverse possession.

Her pleadings and evidence show that in 1926 John Morris resided upon and owned the property at the time of his death, intestate, in that year. That John Morris was survived by his widow, Mrs. John Morris, who acquired a homestead interest in the property, and shared the remainder interest with their children and grandchildren who are the principal defendants in this case.

The evidence further shows that the widow, Mrs. John Morris, resided upon the property for approximately two years following her husband's death and then turned the farm to her grandson, John Wells (husband of plaintiff) to be managed, leased, and operated for her. That during the depression years, 1930–1939, John Wells handled the renting of the farm and gave the rentals to his grandmother, Mrs. Morris, after paying taxes, and on other occasions failed to pay the taxes at her direction and gave her all of the rentals. The record does not reveal the amount of the rentals or the taxes, but it appears reasonably certain that there were years when the rentals were insufficient to pay the taxes. The property was sold at original tax sale in 1935, and at resale to the county in 1939. Mrs. John Morris died, intestate, in August, 1939.

In 1940 John Wells purchased the land from the county, and received and recorded a county commissioner's deed. He, John Wells, continued in possession of farm following the death of his grandmother, Mrs. Morris, in 1939, and following the receipt of his deed from the county commissioners in 1940, and in 1959 about three months prior to his death, he deeded the property to his wife, Edith N. Wells, the plaintiff herein. This action to quiet title was filed by Mrs. Wells in 1961.

The defendants in this case, for the most part the children and grandchildren of Mr. and Mrs. John Morris, filed their answer and cross-petition attacking the validity of the resale deed and county commissioner's deed, and alleged that in 1926, or 1927, John Wells entered into an agreement with his grandmother, Mrs. Morris, and the other heirs wherein he agreed to take charge of the property, keep the taxes paid, look after his grandmother and to protect the interests of all of the heirs of John Morris, deceased. That in return, defendants allege, Wells was to have the use and occupancy of the land, and the rentals therefrom. That the agreement was to continue until such time as Wells could "clear up the title to the property and distribute the interests of the respective heirs to them". Defendants further alleged that they knew nothing of the tax deed to Wells, and that, as a result of the alleged contract Wells held the title, not adversely to, but in trust for them, and that because of his contractual duty to keep the taxes paid he could not, as to them, become a legal purchaser of the property at the county commissioners' sale.

At the conclusion of the trial the trial court held that the estate of one Joseph E. Crawford, is the owner of an undivided ½ interest in all minerals and in and under an eleven acre tract involved in this action. No appeal was taken from this part of the trial court's judgment by the plaintiff.

The trial court held that Doyle Wright, by reason of his minority, was not barred by limitations and awarded him an undivided ⅟₈₄th interest in the property (subject to the Crawford Estate's interest in the minerals).

As to all other defendants the trial court held in favor of the plaintiff and it is from this part of the judgment that the defendants have taken their appeal.

For their first proposition for reversal of the trial court the appealing defendants assert that one who secures possession of property under agency or trust relationship, who has a moral or legal obligation to pay the taxes, cannot thereafter purchase the property at tax sale for his own benefit, and such action will constitute merely a mode of paying taxes on behalf of the owners. Brooks v. Garner, 20 Okl. 236, 94 P. 694, 97 P. 995; McClaren v. Steele, et al., Okl., 365 P.2d 378; and Burnett et al. v. Cole et al., 193 Okl. 25, 140 P.2d 1012.

Under the principle that a general judgment by the trial court is a finding of every specific thing necessary to support it, Gillespie v. Dougherty, 179 Okl. 330, 65 P. 2d 486, it may be said that the judgment for plaintiff herein amounts to a finding that John Wells was under no moral or legal obligation to pay the taxes on the premises concerned. We must therefore examine the evidence to determine whether the court's finding in that regard is against the clear weight of the evidence.

The plaintiff, Edith N. Wells, testified that in renting this farm to others prior to the death of his grandmother that her husband, John Wells, was acting as agent for his grandmother; that he was managing for her; that he kept the property in repair; that he made the rental contracts; that he paid the taxes; that he gave the rentals to his grandmother; and further testified:

"Q. Well, I thought you told me a few minutes ago, it was one of his duties to pay the taxes?

"A. It was, but there was no money to pay them with.

"Q. Well, I thought you told me he (John Wells) put money in the bank?

"A. What little there was he put in the bank or gave to her. She needed it. That was all she had for her support, her medicine and care. That is why the taxes were not paid.

"Q. Do you know whether he explained to her—

"A. Yes, he explained to her.

"Q. (Continuing)—that he was giving her the money and not paying the taxes?

"A. Yes.

"Q. Did you ever hear him say that to her?

"A. Yes.

"Q. What did he tell her?

"A. That there was no crops being produced on the place, no rent money, and what little there is I will give to you, but not enough to pay the taxes."

Defendant, Roy Morris, in testifying for the defendants testified that he is a son of Mr. and Mrs. John Morris, deceased. That about two years before his mother died he heard the agreement between John Wells and Mrs. Morris which was to the effect that John Wells was to take the place and keep it up and pay the taxes for the rent. That about two years after the death of his mother, Mrs. Morris, that he, Roy Morris, asked Wells how he was getting along with the place and that Wells said "very well." "I said, 'Well, one—they have been wanting us children to take it back.' He said, 'Well, when you get ready to take it back, I will turn it over to you. I'll keep it up and keep the taxes paid.'"

The testimony of the plaintiff, Mrs. Wells, and the testimony of the defendant, Roy Morris, is not verbally contradicted other than as above shown. However, the plaintiff did testify that her husband, John Wells, started claiming this property as his own when he took the deed from the county

commissioners in 1940. As tending to support this claim of ownership the evidence further shows that John Wells in 1939 or 1940 either built or reconstructed the house and barn that were upon the property; he kept the fences in repair around the property; he put two new roofs on the house; and executed an oil and gas lease upon the property in 1950. The significance of valuable improvements is noticed in Reniker v. Kansas City, Ft. S. & M. Ry. Co. et al., 55 Okl. 759, 155 P. 255.

■■ From the foregoing it is apparent that the court had for determination (1) the question of whether John Wells was under a legal or moral obligation to pay the taxes at or after the time they became due and (2) whether he claimed adversely to the other heirs after receiving the commissioner's deed in 1940. There inheres in the judgment a finding that John Wells was not under a legal or moral obligation to the defendants to pay the taxes and that he claimed adversely after receiving the commissioner's deed. We are unable from the authorities cited and from the evidence to determine that this was error. According to plaintiff's testimony, which the trial court was authorized to believe, Mrs. Morris (the contracting party) accepted the rentals with knowledge that the taxes were not being paid and would not be paid. Under the plaintiff's testimony it can not be said that John Wells failed to discharge any moral or legal duty to Mrs. Morris, and under plaintiff's testimony it can not be said that Wells was under any moral, legal, or contractual duty to pay the taxes for and on behalf of any of the defendants. In this connection the evidence shows that John Wells did not inherit any part of this property from his grandparents. John's mother (a daughter of Mr. and Mrs. John Morris) inherited an interest, survived her parents, and died in 1956, seventeen years after the death of Mrs. Morris and sixteen years after the issuance of the commissioner's deed. It therefore can not be said that Wells was under any duty as a co-tenant

to pay the taxes at any time prior to 1956. From the record and the authorities cited, we are unable to determine that the trial court erred in holding that John Wells was under no contractual or legal duty to pay the taxes on the farm, or that he erred in concluding that plaintiff and her deceased husband, Wells, had claimed the property adversely for more than fifteen years. The evidence of the plaintiff, under the circumstances, does not appear improbable or less worthy of belief than that of the defendants.

For their second proposition defendants assert that the statute of limitations provided by 12 O.S.1961 § 93(3, 4) and 60 O.S.1961 § 333, will not apply in favor of an agent or trustee who secures possession of real property by virtue of his agency or trust relationship and thereafter secures a tax deed in his own name against his principal or beneficiary, until the occupancy becomes adverse by actual repudiation of the relationship and notice thereof to the principal or beneficiary. While we agree with this proposition we do not believe it to be decisive in this case.

As heretofore noted under plaintiff's evidence John Wells was the agent of his grandmother and was not acting as agent for the heirs. With her approval he did not pay the taxes for some of the years between 1930 and 1939. Under her homestead right Mrs. Morris had the right of exclusive possession of the farm during her life and the right to have it handled and rented through her grandson and agent, John Wells. This homestead right and right of possession ceased upon the death of Mrs. Morris in 1939, and Well's agency relationship ceased at that time. It is not asserted that Wells then became the agent of the heirs of Mr. and Mrs. John Morris at that time, as a matter of law. The assertion of agency between Wells and the heirs seems to be based upon the testimony of Roy Morris which the trial court has obviously rejected. Therefore it can not be said that John Wells secured possession of the property by any agency relationship between himself and the heirs either before or after the death of Mrs. Morris, and it can not be said that he repudiated any agency relationship between himself and the heirs, or that he was under any legal duty to give notice to the heirs of the repudiation of an agency which did not exist. If there was no agency relationship in 1940, between Wells and the defendants as a matter of law, and none in fact under the trial court's judgment, we fail to see how Wells would be disqualified from accepting a deed from the county commissioners.

In defendants' fourth proposition it is said that where a tax deed attempts to convey a portion of a tract of land it must be so particularly described that it can be definitely located within the boundaries of the larger tract and it is not sufficient to describe it as a "part", "balance", "fractional part", "residue", or "so many acres out of the tract", or as a "tract less" or "excepting a given number of acres", and such a tax deed does not constitute notice of an adverse claim.

In argument in support of their fourth proposition defendants contend that eleven acres out of the ninety-two acres was imperfectly described in tax procedures under the rule and that plaintiff's title as to these eleven acres must fail. Plaintiff does not controvert the fourth proposition except to assert in her brief that defendants' rights are barred by an adverse claim for fifteen years beginning with the issuance of the county commissioner's deed in 1940. 12 O.S.1961 § 93(4), provides:

"An action for the recovery of real property not hereinbefore provided for, within fifteen (15) years."

60 O.S.1961 § 333, provides:

"Occupancy for the period prescribed by civil procedure, or any law of this State as sufficient to bar an action for the recovery of the property, confers a title thereto, denominated a title by prescription, which is sufficient against all."

In Richards v. Freeman, 207 Okl. 100, 247 P.2d 731, we held that a title by

888

prescription is available either for attack or defense. In the first paragraph of the syllabus in Bonebrake v. Flourney, 133 Okl. 101, 271 P. 658, we held that the title of a person in the actual and peaceable possession of land, claiming the same under a tax deed, void upon its face, will ripen into a good title where continuous, exclusive, adverse, and hostile possession is held thereunder for a period of fifteen years. In the second paragraph of the syllabus in Whitney v. Posey, 180 Okl. 373, 69 P.2d 335, we held:

> "An adverse possession of real estate for the statutory period, held in good faith under a deed, will confer title, however defective the deed may be, and although the judicial proceedings and sale under which it is issued were void, and will do so even if the deed is void on its face."

As we view plaintiff's petition her action was based upon adverse possession, and not upon the commissioner's deed. The commissioner's deed appears to have been mentioned in plaintiff's petition for the purpose of establishing one of the essential elements of adverse possession; namely, that plaintiff's (and her husband's) possession during the statutory period was not held in subordination to any title or claim of the defendants, but was adverse and hostile to all claimants. Whitney v. Posey, supra.

In defendants' third proposition we are reminded that in an action of purely equitable cognizance this court will consider the entire record, weigh the evidence, and cause to be rendered such judgment as the trial court should have rendered. We have examined the record and have weighed the evidence and have concluded that the judgment of the trial court should be affirmed.

Affirmed.

BLACKBIRD, C. J., and DAVISON, WILLIAMS, IRWIN and BERRY, JJ., concur.

JOHNSON, J., concurs in result.