Faye BROWN, Plaintiff in Error,

v.

Orva Lester PECK, Defendant in Error.

No. 37524.

Supreme Court of Oklahoma.

Feb. 17, 1959.

Jerome C. Sullivan, Paul D. Sullivan, Duncan, for plaintiff in error.

Harold Springer, Ardmore, for defendant in error.

DAVISON, Chief Justice.

This suit was instituted by the plaintiffs, Faye Brown and her grantees, Pat F. Brown, Clarabelle Brown Wagnon, Shirley Brown Cochran and Lige Akers, to quiet their title to a total one-seventh undivided interest in a 160 acre tract of land in Carter County, Oklahoma, as against the defendants, Orva Lester Peck, Fern Boone, Daye K. Peck, Fleda Peck, Bernice Jent and Patrick H. Peck. The said Faye Brown was the mother of all the other plaintiffs except Akers and was the sister of all of the defendants. The parties will be referred to in the same order in which they appeared in the trial court.

The controversy here is, for all practical purposes, between the plaintiff, Faye Brown, and her brother, Orva Lester Peck, one of the defendants. The property involved consists of a quarter section of land which was acquired by their mother, Belle Peck, in 1913 by unalloted land deed. In January, 1945, shortly after the death of her husband, the said Belle Peck conveyed said land in equal undivided shares to her seven children, by a deed of that date, recorded February 3, 1945. The defendant, Orva Lester Peck, claimed title to a two-sevenths interest superior to the alleged title of plaintiffs by virtue of a deed to the entire property in September of 1940, executed by his mother

and his father who was then living. Prior to the commencement of this suit, defendant had executed deeds conveying a one-seventh undivided interest each in said lands to the other five brothers and sisters who are defendants herein. All parties concede that said five own a total of five-sevenths undivided interest in the property and they need not be further considered in this litigation. The plaintiff controverts the claim of Orva Lester Peck to title to a two-sevenths interest founded upon the 1940 deed upon the alleged grounds that there was no consideration for said deed and that the same was never delivered, and consequently, was ineffective and void. The trial court held that the other plaintiffs, grantees of Faye Brown, had title to the extent claimed because the 1940 deed was not recorded until 1951, long after the conveyances to them. It was further held that the remainder of the two-sevenths interest was owned by the defendants and that said Faye Brown owned no part of the property. From that judgment she has appealed.

From a careful and thorough review of the record, we are of the opinion that the 1940 deed was not shown to have been delivered and that plaintiffs were entitled to judgment as prayed for. The mother, Belle Peck, the grantor in the 1940 deed, testified that the same was never delivered and was never intended to be delivered; that, at the time of the execution of the 1940 deed, the defendant was regularly employed in the oil fields and they thought he might be able to lease the land for oil and gas purposes; that the deed was executed and was to be delivered in the event the lease possibility worked out; that, if a lease was sold, Mr. and Mrs. Peck were to receive the payments made under its terms; that the land was never leased and the deed was filed away in a box in the closet; that it remained there until the defendant took it out in 1949 and that there was never any intention of delivering it. One of the defendant's brothers testified that in 1949, he and defendant were going through some boxes of papers belonging to their parents when they ran across the old deed; that the defendant took the deed and left; that witness immediately notified his mother who was in another part of the house. Defendant denied the occurrence of such an incident and insists that the deed was duly and regularly delivered to him. However, it is significant that Belle Peck was the owner of the property, denying delivery, and that defendant testified that the deed was delivered to him by his father at the time defendant was endorsing a note for him at the bank.

The testimony in plaintiff's favor by the mother and brother of defendant is corroborated by other admitted facts and circumstances. These consist of the following: Although defendant asserts delivery of the deed soon after its execution in 1940, it was not placed of record until 1951; defendant made no claim of ownership until the latter date; immediately after recording the 1940 deed defendant executed a warranty deed conveying a ⅐ undivided interest each in the property to all of his brothers and sisters except the planitiff; after 1945 the property was assessed for taxation in seven parts and each child paid ⅐ of the taxes; the rental from the agricultural leases and the income from oil and gas leases was equally divided between the seven children; defendant never claimed more than his ⅐ of the income and never paid more than his ⅐ of the taxes. All of these facts are inconsistent with delivery of the deed and passing of title.

There is considerable testimony in the record concerning the estate of P. H. Peck, deceased, particularly as to numerous other tracts of land owned by him at the time of his death. All of such evidence is immaterial to the issues here and merely tends to cloud and confuse this litigation. It has no bearing on whether or not the 1940 deed was delivered, which is the only question necessary for determination here. However, it does strongly indicate a motive for defendant's position. He was attempting to force Faye Brown to exchange for her share of the property here involved, an interest in a 20 acre tract of oil-producing land owned by her individually, her title being approved and affirmed by this court in

the case of Jent v. Brown, Okl., 280 P.2d 1005. Such a position tends to strengthen the plaintiff's case here.

The law determinative of the present controversy is simple and firmly established. "It is essential to the validity of a deed that there be an actual delivery in order to pass title * * *. A valid delivery sufficient to pass title occurs only when the grantor parts with dominion over the deed with the intention to pass title. * * * Whether there was a valid delivery with intent to pass present title into the grantee is a question of fact." Dowell v. McNeill, Okl., 285 P.2d 856, 859; Little v. Echols, Okl., 269 P.2d 984.

Our conclusion is that the evidence establishes that there was no delivery of the 1940 deed to the defendant and the same was a nullity. "In an action of equitable cognizance this Court will examine the whole record and weigh the evidence, and will reverse the judgment of the trial court if found to be against the clear weight of the evidence or is contrary to established principles of equity." Rees v. Briscoe, Okl. 315 P.2d 758, 759.

The judgment is reversed and cause remanded with directions to render judgment for plaintiffs.

WILLIAMS, V. C. J., and JACKSON, IRWIN and BERRY, JJ., concur.

HALLEY, JOHNSON and BLACK-BIRD, JJ., dissent.

HALLEY, Justice (dissenting).

This is an unfortunate lawsuit in which a brother and a sister are litigating the question of the ownership of an interest in a piece of land. It is a matter of equitable cognizance and has been decided by the trial judge in favor of the brother. If his decision is not against the clear weight of the evidence it should be affirmed.

The principal question for determination was whether a deed had been delivered to the brother prior to January 30, 1945, when a second deed was executed, delivered and filed for record.

There is no question but that the first deed was executed. It was dated December 27, 1940. This deed was not filed for record until November 11, 1951.

The sister claimed that this deed was never delivered to her brother but that he extracted it from her father's files long after her father's death. Another brother so testified. The mother of these litigants testified, then almost 77 years old, that the deed was not delivered but admitted she turned the deed over to her husband after she and he executed it.

The brother, Orva Peck, testified that his father gave him the deed executed in 1940 to secure him for some money he advanced for his father. He further tesified that his sister Faye Brown had promised him if he would deed back to their father's estate a certain farm which stood in his name she would deed a certain twenty acres that stood in her name back to the estate. After he performed his part of this agreement she refused to go through with her part of the agreement. He then decided to put the deed on record that his father had delivered to him in 1940. He gave to each of his brothers and sisters a one-seventh interest in the land except his sister Faye Brown. He refused to deed her the one-seventh because she had reneged on the twenty acre deal.

A sister Fleda testified she saw the deed to her brother Orva in his possession in 1941 or 1942.

We have then the testimony of the mother that the deed was not delivered to Orva although the deed was not in her control and that of the oldest son Daye Peck that he saw Orva take it out of his father's papers in 1949. On the other hand we have the testimony of Orva that his father delivered the deed to him and his sister Fleda testified she saw the deed in Orva's possession before her father died.

The evidence further shows that Orva paid a note at the Bank in Duncan which included $670 that went into an automobile

for Faye Brown and her mother. There was evidence that Orva assisted his parents in the depression years.

How can we say now that the decision reached by the trial judge was against the clear weight of the evidence? As I view the evidence it was not. There was more testimony that established that the deed was delivered than there was that it was not.

It is to be remembered that where a grantee is in possession of a duly executed deed, presumption in favor of delivery can only be rebutted by clear, positive evidence to the contrary. Fisher v. Pugh, Okl., 261 P.2d 181 and Wasson v. Collett, 204 Okl. 360, 230 P.2d 258. See also 26A C.J.S. Deeds § 204.

I dissent.

I am authorized to state that JOHNSON, J., concurs in the views expressed herein.