**F. A. SHELLENBERGER et al.,**
**Plaintiffs in Error,**

v.

**Lucille HICKS, Defendant in Error.**

No. 39331.

Supreme Court of Oklahoma.

Nov. 14, 1961.

Dissenting Opinion April 10, 1962.

Rehearing Denied April 10, 1962.

J. W. Dixon, C. C. Wilkins, Marietta, for plaintiffs in error.

Marvin Shilling, Ardmore, for defendant in error.

JOHNSON, Justice.

The defendant in error, Lucille Hicks, hereafter referred to as plaintiff, filed this action in the District Court of Love County, Oklahoma, on March 25, 1959, to quiet title to the minerals underlying 30 acres of land.

The defendants were the owners of such minerals prior to the issuance of a resale tax deed issued to Love County and recorded on May 12, 1942. Thereafter a county commissioner's deed was issued to the plaintiff, Lucille Hicks, and recorded on July 6, 1942. On July 20, 1942, the plaintiff, Lucille Hicks, conveyed said land

to Lee White, reserving all of the mineral estate underlying such 30 acres, said mineral interest being the subject matter of this litigation. About thirteen months later Lee White conveyed said land to his brother, Ernest White, and approximately one month later Ernest White conveyed the land to one Kindsfather who held the title to the surface of the land from September, 1943 to January, 1947, when he conveyed it to one Orell. Orell held the title to the surface from January, 1947 to November, 1948, at which time he conveyed to Barton Underwood and wife who held the title until June, 1958, at which time the State of Oklahoma acquired this tax title to the surface of said land and has so held it ever since.

The plaintiff seeks to quiet her title to the mineral estate. The defendants, the owners of the record title prior to the resale, resist and by way of cross-petition attack the validity of plaintiff's tax title. The court entered judgment in favor of plaintiff, and the defendants appeal.

The record discloses that the original county commissioner's deed was void for the reason that the resale deed by which the county had acquired its title was advertised and sold for all of the 1941 ad valorem taxes, although the last quarter of such taxes were not delinquent on the date of the first publication of the notice of resale. We have held that such a sale was void as of the date of this sale, to-wit: 1942. House v. Mainka, 196 Okl. 174, 163 P.2d 225 and Sarkeys v. Evans, 197 Okl. 304, 170 P.2d 229.

The issue in this case concerns the application of the statute of limitations, 12 O.S.1951 § 93. The tax deed under which plaintiff claims is void. Therefore, the question is: Has plaintiff's title been validated by the statute of limitations?

■ In the case of Kizzire v. Sarkeys, Okl., 361 P.2d 1082, 1083, we said in the first and second paragraphs of the syllabus:

"In order to apply 12 O.S.1951 § 93, in bar of an attack upon a void tax deed, it must be shown by the evidence that the holder thereof has recorded his tax deed and has been in possession of the land therein described for five continuous years.

"Evidence examined and held that possession of the land involved had not been held as above stated, and therefore the statute of limitations had no application."

In the body of the opinion it is said:

"When the land is vacant, the constructive possession is in the valid title holder. Williams v. Bailey [Okl., 268 P.2d 868], supra; Morton v. Van Orsdol, 203 Okl. 394, 222 P.2d 520, and Sarkeys v. Payte, Okl., 274 P.2d 539.

"The sum of the above opinions is that in order to make the statute applicable there must be a holding of possession by the void tax deed holder for five years under the same conditions as have been applied in cases involving adverse possession under the fifteen year statute."

■ It is therefore necessary to examine the evidence to determine who was in possession of this land during the years which intervened between the issuance of the tax deed and the institution of the suit. In this connection, it should be borne in mind concerning the application of this statute that the party relying upon adverse possession has the burden of establishing such possession. Farris v. Smallwood, 204 Okl. 123, 227 P.2d 644. And that the possession required under the five year statute is of the same character as required under the fifteen year statute. Kizzire v. Sarkeys, supra.

This inserts into the picture the element of continuity which is always present in the acquirement of title by adverse possession.

Bearing these in mind, let us examine the evidence of the plaintiff.

Lee White, witness, was the grantee of Hicks in less than two months after the tax deed. He owned the tax title for approximately thirteen months from July, 1942, to August, 1943. He testified that

he did not see the place while he had title. He let a fellow have it. He did not know whether the man lived on it. The only time he ever saw the land was prior to the tax sale. He received no rent and did not know when Hughes (the supposed occupant) moved on or off.

. This evidence is of no probative value to establish possession.

Ernest White acquired deed August 10, 1943. At the time he bought no one was on it. He did not rent it. He owned this title only from August to September, 1943, and sold to Kindsfather, who never testified in the case.

Kindsfather owned this tax title from September, 1943 to January, 1947. The record is silent concerning possession during this period. It is therefore apparent that up to January, 1947, no period of possession has been established.

John Orell purchased the tax title in January, 1947, and lived on the land "three years, maybe not so long." He moved out when the house burned and hasn't lived on it since. It has "laid out" since he moved. It has stayed vacant since he moved off. Nobody has been in possession. It was vacant when he moved on. He sold to Barton Underwood in November, 1948.

Barton Underwood did not testify, and the only evidence in the entire record concerning the time of his ownership is that he never took possession or rented it.

The State of Oklahoma took title and possession in June, 1958, by condemnation against both plaintiff and defendants and has owned the surface ever since. This action was filed in March, 1959, when the State had been in possession less than a year.

■ It is thus apparent, assuming that the proper character of possession was established, that the plaintiff never proved a continuous period of five years' possession by any parties, even though the possession of the surface made such possessors trustees in possession of the minerals for the benefit of the tax title holder, a fact which is not adjudged hereby.

■ As was said by this court in Anderson v. Francis, 177 Okl. 47, 57 P.2d 619, 620, in the first paragraph of the syllabus:

"Title to land cannot be acquired by adverse possession unless the possession is open, notorious, hostile, and exclusive, and it is also essential that such possession, in order that it may ripen into title, should be shown to be continuous and uninterrupted for the full statutory period. The moment the possession is broken it ceases to be effectual, because as soon as, and as often as, a break occurs the law restores the constructive possession of the owner."

Judgment reversed and remanded with directions to quiet title in defendants upon their making good the tender heretofore made.

WELCH, DAVISON, HALEY, JACKSON and IRWIN, JJ., concur.

WILLIAMS, C. J., and BLACKBIRD, V. C. J., and BERRY, J., dissent.

WILLIAMS, Chief Justice (dissenting).

I cannot agree with the statement by the majority that there was no possession of the land herein involved on the part of the grantees of defendant in error (plaintiff) for five continuous years.

Plaintiff's grantee, Lee White, was in possession for one year. He assumed possession to the extent that he agreed that a tenant could live on the land for crop rent. Ernest White, next grantee, owned the land a month in 1943, and during that time went out to the land a "couple of times." His grantee, Kindsfather, kept it three and a half years, during part of which time a Mr. Williams lived on it. When the next grantee, John Orrell, bought the land in 1947 and moved on it, Williams hadn't been gone "very long". Orrell lived on the land about three years until the house thereon burned.

The possession above detailed, up to the time of the deed from Orrell to Underwood in November, 1948, extended for a period

of more than six years. Orrell's occupancy of the house on said tract continued for one and one half years after the date of his deed to Underwood. This latter possession was as tenant or trustee of Underwood. Brown v. Privette, 109 Okl. 1, 234 P. 577. The fact that the burning of the house forced him to quit living on the land did not serve to extinguish his possession. This is borne out by the results of a condemnation suit involving this tract of land. Orrell's deed to Underwood was not recorded for some nine years. Meanwhile, the State condemned part of the land for public purposes and in June, 1958, paid Orrell $600.-00. Orrell's deed to Underwood had been filed four months previously, but such deed contained an incorrect description of the land. A deed with a corrected description was filed in July, 1958.

It is interesting to note that the attorney who represented Orrell and was successful in recovering the above award in his favor in the amount of $600.00 was the same attorney who thereafter represented a defendant in the action from which this appeal grew attempting in the course of such representation to render nugatory that same possession upon which as attorney for his former client he had relied in the former proceeding.

Orrell's title to the surface of this tract, and plaintiff's title to the minerals, were deraigned through the same tax resale deed.

Other evidence of dominion over the tract by the grantees who were subsequent to the tax resale deed was the payment of taxes by said grantees for the years 1943 through 1957, the years for which taxes were due prior to institution of the condemnation action.

Evidence of open and notorious control and dominion of the minerals was the execution in 1942 by plaintiff and her husband of a five year oil and gas lease on said tract.

There is no evidence that Lee White's tenant did not occupy the premises. In view of lack of such evidence, we will have to assume that he did live on the land.

No claim is made that Williams was not a tenant of Kindsfather. The testimony would seem to indicate that Williams quit the land so that Orrell could move thereon.

To my way of thinking, the evidence to which I have referred demonstrated sufficient possession to give the tax deed holders and their grantees and subsequent grantees a valid title though based upon a voidable resale tax sale title. Kizzire v. Sarkeys, Okl., 361 P.2d 1082.

If such claimants did acquire title pursuant to such deed and possession, defendants could get title back only by obtaining a prescriptive title by open, notorious, continuous possession of the lands involved on their own part for the full prescriptive period of fifteen (15) years provided for by 12 O.S.1961 § 93, sub-section 4. See Liles v. Smith, 206 Okl. 458, 244 P.2d 582.

In Tucker v. McCrory, Okl., 266 P.2d 433, 435, we said:

"We think the fallacy in counsel's argument stems from confusion of the terms 'possession' and 'residency.' Actually residing on property is not a necessary element of the adverse possession required under the above quoted 5-year limitation statute. All of the authorities show that a person may be in possession of real estate without residing on it. Open, notorious and uninterrupted control and dominion over the property under claim of right is all that is required. Anderson v. Francis, 177 Okl. 47, 57 P.2d 619; Hass v. Gregg, 52 Okl. 51, 152 P. 1126; Gross v. Robinson, 36 Wyo. 392, 256 P. 80, 57 A.L.R. 578; 42 Am.Jur., Possession, Sec. 42; 73 C.J.S. Property § 14b."

On the basis of the above I dissent to the majority opinion.

I am authorized to state that Mr. Vice Chief Justice BLACKBIRD and Mr. Justice BERRY concur in the views herein stated.