Dimple MOBBS, Trustee, Appellee,

v.

The CITY OF LEHIGH, a municipal corporation, Appellant.

No. 55923.

Supreme Court of Oklahoma.

Dec. 14, 1982.

As Corrected Dec. 16, 1982.

Warren Gotcher, Gotcher, Gotcher & Taylor, McAlester, for appellant.

Austin R. Deaton, Jr., Deaton & Davison, Inc., Ada, for appellee.

OPALA, Justice:

On certiorari we reach three issues: [1] Does the application of the Marketable Record Title Act [Act] to the instant case stand barred by the settled law of the case? [2] If not, does the Act operate against a political subdivision so as to extinguish any claims by the City in the contested land?; and, if so, [3] Can a void county tax deed serve as a valid root of title within the meaning of the Act? We answer the first question in the negative and the last two in the affirmative.

This case involves a dispute between the City of Lehigh [City] and a landowner [Mobbs] over a ten-acre tract. Both parties claim title from a common source, the Chickasaw and Choctaw Nation [Nation]. The City claims to have acquired its title to the 10 acres in contest by condemnation proceedings of a 40-acre tract in 1915. Mobbs claims that her predecessors in interest acquired title to the acreage under consideration by a 1917 patent from the Nation. The patent in question—covering a 140-acre tract—included the land in suit.

The critical muniments in Mobbs' chain of title are her predecessors' county tax deed of 1940 and a 1948 quiet-title decree in their favor. The City, a defendant in the 1948 suit, made no appearance in the case. Mobbs acquired title by inheritance from her father in 1966. She first brought her quiet-title suit in 1971, when the City fenced in the 10-acre tract. Because in that suit the court gave *res judicata* effect to the 1948 decree, title was quieted in Mobbs. At all times since the tax deed, Mobbs asserts, she and her predecessors in title have been in continuous possession of the contested land.[1]

Two years after the 1971 decree the City unsuccessfully sought to have it vacated, claiming that it was void because a tax deed cannot operate to divest a municipality of its land. On appeal from the order denying the City's motion to vacate, the Court of Appeals reversed and remanded the cause for further proceedings.[2] During the retrial of the suit, after vacation of the 1971 decree, judicial inquiry came to focus upon, and resolve, Mobbs' claim that the Act operated to extinguish the City's claim to the contested land. The decree again went against the City and another appeal followed. Affirming the trial court, the Court of Appeals held that, although the City's title to the land might have been affected by the Act, it was unnecessary to reach that

---

1. At one time the City had wells on 30 acres (not in controversy) of the 40-acre tract. These wells were part of the City's water works system. According to Mobbs' evidence, after her predecessors had acquired title by resale tax deed in 1940, the contested 10-acre tract has been used for cattle grazing. The City sought

to prove that during some of this period the 40 acres it claims in this suit was being used for its water works system. By the trial court's decree this disputed fact issue was resolved in Mobbs' favor.

2. Infra note 3.

issue because the City had failed to establish that its claim was based on a complete condemnation proceeding. The City sought further review in this court. It tendered to us two grounds: (1) the case was decided on a matter not in issue—the validity of the City's title by condemnation and (2) the Court of Appeals dealt with a matter of substance—applicability of the Act—not heretofore decided by this court. We granted certiorari and now reinstate the trial court's judgment.

The record reveals the parties stipulated at trial that "in 1915 there was a condemnation placing title [to the ten acres] . . . in the City of Lehigh". This, we believe, amply establishes the City's claim to the acquisition of the disputed tract by condemnation. We next examine the prior 1971 decree—and its appellate disposition in 1976—to determine if the trial court was barred by the settled law of the case from applying the Act to this case.

City was a void judgment. That decree declared that although the City had in fact acquired the land in suit by condemnation, its title was divested by the subsequent tax deed. Reversing the 1971 decree, the reviewing court held it was error to predicate the quiet-title decree on a resale tax deed that was legally ineffective against a city.[4] What stands settled by prior litigation in this case is that the 1948 and 1971 decrees were both void—as to the City—on the face of the judgment roll. This is so because the tax deed—as a muniment (rather than a root) of title—was entirely inefficacious against the City. There is nothing in the course of antecedent decisional process that settles the dispositive issue now before us— whether the Act Mobbs subsequently invoked extinguished the City's title. Mobbs clearly is not barred in this litigation from tendering the tax deed as her *root of title,* within the meaning of the Act,[5] and from seeking a quiet-title decree on that basis.

## I.

### THE SETTLED LAW OF THE CASE DOES NOT BAR THE COURT'S APPLICATION OF THE MARKETABLE RECORD TITLE ACT TO THIS LITIGATION

In the first appeal of this case[3] —from a denial of the City's motion to vacate brought after title had been quieted in Mobbs—the issue presented and reached was whether the 1971 decree against the

## II.

### THE MARKETABLE RECORD TITLE ACT

We next move to examine those provisions of the Act which are deemed pertinent to this litigation. In so doing, we intimate no view on the constitutionality of the Act because its validity was not framed as an issue in the trial court. In effecting our disposition of this case we will proceed on

**3.** The Court of Appeals' opinion in *Mobbs v. City of Lehigh,* Okl.App., 548 P.2d 1048 [1976] is the settled law of the case.

**4.** *Mobbs v. City of Lehigh,* supra note 3 at 1053.

**5.** *Berland's Inc. of Tulsa v. Northside Village Shopping Center, Inc.,* Okl., 447 P.2d 768, 774 [1968]; *Carter Oil Co. v. Eli,* 164 Okl. 273, 23 P.2d 985, 992–994 [1933].
The settled law of the case operates to bar relitigation of only those issues that have been settled by an appellate opinion. *Allen v. California Mut. Bldg. & Loan Assn.,* 22 Cal.2d 474, 139 P.2d 321, 325 [Cal.1943]; *In re Monaghan's Estate,* 71 Ariz. 334, 227 P.2d 227, 228 [1951]. An issue raised, but not reached by the reviewing court, does not fall within the purview of this rule. The doctrine

is distinguishable from *res judicata.* Although both doctrines are founded on a public policy against reopening that which has previously been decided, *res judicata* is broader in scope. It operates to bar all *theories* and all *issues* of fact or law which *were* litigated or which *could have been* litigated. A judgment that is reversed on appeal—and the cause is remanded—loses its conclusive character and cannot stand as a bar to further suit on the same cause of action. The 1971 quiet title judgment, reversed by the Court of Appeals as being void, cannot hence serve as a basis for the application of the *res judicata* doctrine. Only the issues reached in the first *Mobbs'* opinion, supra note 3, constitute the settled law of the case.

the assumption that the Act is constitutional.[6]

The Act is based upon the principle that when one has clear record title for at least thirty years, all interests recorded prior to this period should be cut off unless preserved by filing a proper notice.[7] To effectuate this principle the Act focuses upon the concepts of "root of title"[8] and "marketable record title".[9]

Root of title is a "conveyance or other title transaction" within the record chain purporting to create the interest claimed.[10] Recordation of that transaction determines the effective date of the title root. Any title transaction may serve as the root of title if it is the most recent transaction in the claimant's chain recorded at least thirty years prior to the date marketability is determined.[11]

Marketable record title exists when there is an unbroken chain of record title to real estate for at least thirty years and no recorded instrument in the chain purports to have a divestitive effect.[12] The unbroken chain may consist of only the root of title or several transactions of record purporting to vest the interest in the claimant. The chain examined may be greater than thirty years if root of title has been of record longer than thirty years.[13] Once marketable record title is established, all interests prior to the effective date of the root of title are extinguished[14] unless preserved by the Act.[15]

## III.

## THE MARKETABLE RECORD TITLE ACT MAY OPERATE AGAINST A MUNICIPALITY

The City maintains that the Act impermissibly operates against it as a statute of limitations. We cannot agree.

The Act's conceptual underpinnings distinguish it from a statute of limitations. The latter bars the owner's *remedy* when his suit is not filed within the prescribed

---

**6.** Neither does the case present the issue of whether the Act is self-executing. See comment in 51 OBJ 2517, Anderson v. Pickering And The Marketable Record Title Act by Blair and Rheinberger. In *Marshall v. Hollywood, Inc.,* 236 So.2d 114, 118 [Fla.1970] the court declined to consider arguments of the Act's validity for similar reasons.

**7.** 16 O.S.1981 § 74. The Act preserves interests reserved by the filing of a proper notice. It permits the preservation of pre-root interests by establishing a procedure for the filing of a notice of claim that will be disclosed in the chain of record title subsequent to the root of title. In order for the claim to be effective and to be entitled to recording, it must "contain an accurate and full description of all land affected by such notice which description shall be set forth in particular terms and not by general inclusions...." If the claim is based upon a previously recorded instrument, the notice description "may be the same as that contained in such recorded instrument".

**8.** 16 O.S.1981 § 78.

**9.** 16 O.S.1981 § 71.

**10.** 16 O.S.1981 § 78.

**11.** A "title transaction" is "any transaction *affecting title* to any interest in land, *including* title by will or descent, *title by tax deed,* miner-

al deed, lease or reservation, or by trustee's, referee's, guardian's, executor's, administrator's, master in chancery's, sheriff's or marshal's deed, or decree of any court, as well as warranty deed, quitclaim deed, or mortgage." [Emphasis ours]. 16 O.S.1981 § 78(f).

**12.** "Purporting to divest", the phrase used in 16 O.S.1981 § 71(b), is not defined in the Act. Title examination standard 19.4 defines matters "purporting to divest" as those which "if taken at face value warrant the interpretation that the interest has been divested". 16 O.S.1981, ch. 1, App.

**13.** If no title transaction is recorded exactly thirty years prior to the time marketability is ascertained, the root of title may be older than thirty years. The chain of title, therefore, will be greater than thirty years.

**14.** 16 O.S.1981 § 73.

**15.** The provisions of 16 O.S.1981 § 72 define certain interests not affected by the Act. Exceptions to the Act are set out in 16 O.S.1981 § 76. Interests in land not extinguished by the Act are those preserved by filing a notice of claim as provided in 16 O.S.1981 § 74, supra note 7.

period.[16] It may be tolled and, unless affirmatively pleaded, it is deemed waived. Marketable title legislation, on the other hand, has for its target the *right* itself. It operates to extinguish any claim or interest, vested or contingent, present or future, unless the claimant preserves his claim by filing a notice within a thirty-year period. If a notice is not filed, the claim is lost.[17] Interests are thus extinguished because claimants failed to record, not because they failed to sue. One whose interest is extinguished by the terms of the Act may be one who never has had an accrued cause of action.[18]

The purpose of the Act is to simplify and facilitate land title transactions by allowing persons to rely on a record title, subject only to certain statutory limitations. This is accomplished by eliminating those ancient defects and stale claims against the title to real property which are not properly preserved—to the end that the period of record search may be limited to relatively recent instruments. To hold as suggested by the City would frustrate the Act's beneficial effect and substantially defeat the legislative objective.

Legislative intent to include municipalities within the coverage of the Act is clearly ascertainable from its text. Unlike those states which except from the Act's operation all interests of the state,[19] Oklahoma specifically declares it immaterial whether the titleholder is an entity that is "natural or corporate . . . private or governmental".[20] In the face of this explicit language, all interests—public and private—are subject to extinguishment.

## IV.

## A VOID TAX DEED MAY CONSTITUTE A VALID ROOT OF TITLE WITHIN THE MEANING OF THE ACT

■ Our consideration of the Act's applicability to this case must include not only a determination of whether governmental interests are subject to its provisions, but also whether a void tax deed can serve as a valid root of title.

It is not inconsistent with legislative policy that a void conveyance will, in some instances, serve as a muniment of title. In 12 O.S.1981 § 93 the legislature provided for a shorter limitation period in favor of persons in possession under a void tax deed. The cited statute expresses our public policy that gives the holder of a void tax deed title by prescription upon possession for five years.[21] A void tax deed hence falls under a rubric different from forged, stolen while undelivered, or surreptitiously removed conveyances.[22]

Legal effect is, in some instances, accorded by the Act to the recording of void instruments. This is consistent with the

---

**16.** *Marshall v. Hollywood, Inc.,* supra note 6 at 119. In Oklahoma, after the owner's remedy is barred, title by prescription may be conferred upon the occupant by 60 O.S.1981 § 333.

**17.** Common-law limitations, unlike the Roman law's "prescription", typically operate to bar the owner's "remedy", not his "right". Opala, *Praescriptio Temporis and its Relation to Prescriptive Easements in the Anglo-American Law,* 7 Tulsa Law Journal 107 [1971].

**18.** Our rationale here is similar to that in *State, ex rel. Central State Griffin Memorial Hospital v. Reed,* Okl., 493 P.2d 815 [1972]. There we held the statute of non-claims applicable to the state and distinguished it from an ordinary statute of limitations. We said that the non-claims' statute operates to destroy the debt or claim, while a statute of limitations withholds a remedy.

**19.** See Wyo.Stat. § 34–10–104(a)(i–v). Although "governmental" interests are included within those which are subject to extinguishment by the Act, excepted from coverage is any interest of the United States. 16 O.S.1981 § 76.

**20.** 16 O.S.1981 § 73.

**21.** *Morris v. Wells,* Okl., 381 P.2d 882, 887–888 [1963]. Adverse possession for a period of 15 years can ripen into valid prescriptive title, no matter how defective the deed may be. *Shellenberger v. Hicks,* Okl., 370 P.2d 292, 293 [1962].

**22.** We neither intimate any view upon nor reach for decision the question of whether a deed that is forged, stolen while undelivered, or surreptitiously removed may serve as an effective root of title.

statute's objectives of limiting the necessity of title investigation to records which post-date the root of title and of facilitating land title transactions.

## V.

### MOBBS' MARKETABLE RECORD TITLE CLAIM IS NOT VULNERABLE TO "INHERENT DEFECTS"

■ Section 72(a) of the Act excepts from its benefits those interests in which the muniment that forms the chain of marketable record title has an "inherent" defect.

In construing this provision of the Marketable Record Title Act,[23] Florida jurisprudence makes a useful distinction between a defect in the "make-up or constitution" of a muniment on which the title depends and one in "transmission" of record title.[24] The former infirmity is deemed to "inhere", while the latter is regarded as one in "transmission" only and hence non-inherent within the meaning of § 72(a).

A forged deed has been construed as activating the "inherent-defect" exception, such as that in our § 72(a).[25] This holding

recognizes that *a defect inherent in the root of title* denotes one that affects the make-up or constitution of the title's muniment—such as a forged deed[26]—but does not include an infirmity in the mere transmission of title, such as is manifested by a "wild deed".[27]

A forged instrument—or one that was materially altered or was stolen while still incomplete and undelivered—is clearly distinguishable from a void tax deed. A forged conveyance is denounced by our law as a felony.[28] This has the effect of depriving such deed of any legal validity or effect and renders it a complete nullity.[29] A forged conveyance is ineffective as a muniment of title for any purpose.[30]

A void tax deed, on the other hand, clearly is legislatively constituted and recognized as a muniment of title.[31] The county's inability to tax the City's property and sell it in default of tax payments does not vitiate the instrument but merely makes it vulnerable to the City's claim of notice by possession for 30 years[32] or to some other defense cognizable under the Act.[33]

Oklahoma's dichotomous approach to void titles is apparent from the different legal

23. Both the Florida and Oklahoma Acts are patterned after the Model Marketable Title Act. The Model Act, proposed in 1960, was the product of a research project on the improvement of conveyancing, sponsored by the Section of Real Property, Probate and Trust Law of the American Bar Association. Moorhouse, The Marketable Record Title Act and the Recording Act: Is Harmonic Coexistence Possible?, 29 Univ. of Fla.Law Review 916, 933 [1977]. Hicks, The Oklahoma Marketable Record Title Act, 9 Tulsa Law Journal 68, 83 [1973].

24. *Marshall v. Hollywood, Inc.,* 224 So.2d 743, 751 [Fla. 4th D.C.A. 1969] affirmed by *Marshall v. Hollywood, Inc.,* 236 So.2d 114 [Fla.1970]; *ITT Rayonier v. Wadsworth,* 346 So.2d 1004, 1011 [Fla.1977]; *Moorhouse,* supra note 23 at 933.

25. *Marshall v. Hollywood, Inc.,* supra note 24.

26. *Marshall v. Hollywood, Inc.,* supra note 24.

27. *Wilson v. Kelley,* 226 So.2d 123, 127 [Fla. 2d D.C.A. 1969].

28. 21 O.S.1981 §§ 1561, 1585.

29. *Kline v. Mueller,* 135 Okl. 123, 276 P. 200, 206 [1929]; *Baldridge v. Sunday,* 73 Okl. 287, 176 P. 404, 405–406 [1918]; *Brown v. Peck,* Okl., 335 P.2d 907, 910 [1959].

30. *Kline v. Mueller,* supra note 29; *Baldridge v. Sunday,* supra note 29.

31. 12 O.S.1981 § 93; *Morris v. Wells,* supra note 21.

32. If the City had been in continuous possession for the 30-year period in suit (1940–1970), its continuous possession would serve as a valid notice under the Act and preserve the City's interest. 16 O.S.1981 § 74(b). Although the Act makes no requirement that the claimant (Mobbs) be in continuous possession for thirty years, she must and did show an unbroken chain of record title. 16 O.S.1981 § 71. See also Hicks, supra note 23 at 83; *Cf.* Neb.Rev. Stat. § 76–288. *The conceptual underpinning for the Marketable Record Title Act is not to be equated or confused with the doctrine of adverse possession.*

33. 16 O.S.1981 §§ 72 and 74.

effect that is given to two distinct classes of void deeds—the forged instrument and the void tax deed. The former class of conveyances will not pass title and hence cannot serve as an effective muniment. The latter class—that of void tax deeds—has met with explicit legislative approbation as an effective muniment of title, though the title so created may be defeated by a timely assertion of the infirmity that underlies it. In short, a void tax deed, which cannot be denied legal efficacy as a valid root of title under the Act, must be deemed to fall under the rubric of those instruments that are defective in "transmission" rather than tainted by an "inherent defect".

The conclusion we reach here is legislatively mandated by the Act's inclusion of governmental interests within its ambit. The statute's purpose would be utterly frustrated—nay, defeated—if we were, on the one hand, to follow its command by holding that it will operate against a governmental entity and then proceed to reason, on the other hand, that because a void tax deed is ineffective as a muniment of title—*vis-à-vis* a municipality—it is equally invalid against it as a root of title under the Act.

The 1940 tax deed constituted a record claim that ripened, with the expiration of time, into an available root of title within the meaning of the Act. Although the tax deed initiating Mobbs' chain of title was doubtless void, it does nonetheless form an effective root of title. Claims arising out of transactions which predate the effective root of title are extinguished by operation of the Act. The City, having failed timely to file a statutory notice or to show continued thirty-year possession by which its claims may be preserved, is now precluded from asserting any interest in the contested land.

The opinion of the Court of Appeals is vacated and the trial court's judgment is affirmed.

IRWIN, C.J., BARNES, V.C.J., and LAVENDER, SIMMS and DOOLIN, JJ., concur.

HARGRAVE, J., concurs specially.

WILSON, J., not participating.

HARGRAVE, Justice, concurring specially:

I concur in the resolution of the limited issues presented by the parties and discussed in the majority opinion.