2009 OK 16
IN RE: THE LORICE T. WALLACE REVOCABLE TRUST DATED DECEMBER 26, 1974, AS RESTATED EFFECTIVE OCTOBER 5, 1993 AND AS AMENDED ON FEBRUARY 12, 1998, THE LORICE T. WALLACE IRREVOCABLE TRUST DATED FEBRUARY 8, 1996, AND THE LORICE T. WALLACE IRREVOCABLE TRUST DATED SEPTEMBER 11, 1992, ALSO KNOWN AS THE LORICE T. WALLACE LIFE INSURANCE TRUST, AND THE LISA FRANCES WALLACE DISCRETIONARY SPENDTHRIFT TRUST.
STEPHEN PAUL WALLACE, Appellant,
v.
RONALD SAFFA AND THE TRUST COMPANY OF OKLAHOMA, Appellees.
No. 101511, Consol. w/101860
Supreme Court of Oklahoma
March 3, 2009
Stephen P. Wallace, Tulsa, Oklahoma, Pro Se Appellant,
Jon E. Brightmire, DOERNER, SAUNDERS, DANIEL & ANDERSON, L.L.P., Tulsa, Oklahoma, Attorneys for Appellee, The Trust Company of Oklahoma,
James E. Poe, COVINGTON & POE, Tulsa, Oklahoma, Attorney for Appellee, Ronald J. Saffa.
WINCHESTER, J.
¶ 1 The appellant, Stephen Paul Wallace, has asserted numerous issues and allegations in this case in a long contest over family trusts. The petition in error appeals a "Judgment and Sentence for Indirect Contempt of Court." We[1] address the issues as argued in the appellant's Brief in Chief and Reply Brief.[2]

I. FACTS AND PROCEDURE
¶ 2 On March 26, 2004, the appellees, Ronald Saffa and The Trust Company of Oklahoma, filed a Motion for Temporary Restraining Order, Preliminary and Permanent Injunction and Request for Expedited Hearing. That motion alleged that Mr. Wallace had filed many different civil cases in many different courts, as well as appeals of many rulings adverse to him. Those cases had been filed in Oklahoma, Illinois, Indiana, and Missouri and included Federal District and Bankruptcy Courts in the Northern and Western Districts of Oklahoma. The motion alleged that in the lawsuits, Mr. Wallace had accused Saffa and The Trust Company of Oklahoma of engaging in actual fraud, fraud upon various courts, theft, criminal and civil conspiracy including participation of many of the judges who had ruled against him, manipulation of state and federal judges, including appellate court justices, bribery, acts involving RICO violations, and various other intentional torts against Mr. Wallace and his family. The motion further alleges that Mr. Wallace had multiple opportunities to appear at hearings and trials to produce evidence or other proof of these allegations, but he never once presented anything to substantiate his claims. These claims were either dismissed by the court or voluntarily withdrawn by Mr. Wallace. The motion alleges that Mr. Wallace had, at the time of the motion, filed forty lawsuits, and that he had litigated and re-litigated claims that he had already tried and lost several times before. The motion alleges that his mother's Trusts in which he was a beneficiary had expended thousands of dollars in legal fees to defend one Illinois case that was dismissed without prejudice after three hearings because Mr. Wallace had failed to appear. The motion asserts that this was the typical course of conduct by Mr. Wallace. The motion claims an injunction was necessary to avoid the unnecessary expenditure of funds to defend the barrage of frivolous litigation in whatever court Mr. Wallace decided to commence another case, and that injunctive relief was the only effective remedy available.
¶ 3 The District Court of Tulsa County, State of Oklahoma, conducted a hearing on April 2, 2004, which was continued to April 16, 2004. Mr. Wallace did not appear at that time. The trial court entered findings regarding its subject matter jurisdiction and jurisdiction over the person of Mr. Wallace. On April 21, 2004, the trial court entered its Temporary Restraining Order and Notice of Opportunity for Show Cause Hearing. It enjoined Mr. Wallace from filing lawsuits or commencing legal proceedings of any kind, in any court or jurisdiction except that trial court, based on any allegations of acts, events, transactions or circumstances in any manner related to or concerning the trusts or the trustees, in any capacity. That TRO set a hearing for May 26, 2004, at 1:30 p.m., to determine whether it should be made a preliminary injunction and continue in force and effect as a preliminary injunction or permanent injunction.
¶ 4 On April 30, 2004, Mr. Wallace initiated a new action in federal court in Washington, D.C., against Mr. Saffa and The Trust Company, as well as over 100 other persons. He did not appear for the May 26, 2004, hearing, where the trial court entered an order continuing the TRO as a temporary injunction. On May 27, 2004, Mr. Saffa and The Trust Company filed an application for citation of contempt for the April 30, 2004, filing in the Washington, D.C. federal court. The court entered its order for citation of contempt requiring Mr. Wallace to appear on July 22, 2004, at 9:45 a.m. to show cause why he should not be punished for contempt of court. He appeared on that date and the trial court set a jury trial for September 9, 2004, at 9:30 a.m. The pretrial conference order signed by the parties outlined the factual allegations by Mr. Saffa and The Trust Company of Oklahoma in support of their request for citation of contempt of court.
¶ 5 At the jury trial Mr. Wallace represented himself and was convicted of indirect contempt of court. He was subsequently sentenced to serve a term of two months (60 days) in the Tulsa County Jail with the latter 39 days suspended upon conditions that he undergo a thorough mental health examination by approved mental health professionals, that he cooperate fully throughout the examination process, and that he also cooperate in any recommended treatment. The trial court required that Mr. Wallace sign any consents necessary to confirm his compliance with the conditions of suspension. In the event that he failed to comply with the conditions and requirements, the court required that he be remanded to the custody of the Tulsa County Sheriff to serve the 39-day balance of the jail time. In addition, Mr. Wallace was fined $26,200.00.[3]
¶ 6 Mr. Wallace appealed that judgment. Although he represented himself in filing his case, two attorneys subsequently entered appearances to represent him. Even after attorneys representing Mr. Wallace filed their appearances in the appeal, Mr. Wallace continued to file his own documents, which complained of matters irrelevant to the judgment against him for indirect contempt of court. The documents Mr. Wallace filed frequently contained abusive, insulting language toward the parties, their attorneys, the trial judge, the judges of the Courts of Civil Appeals, and finally this Court. The documents contain unfounded accusations of conspiracies and criminal conduct of all of the attorneys and judges involved in this matter. One of Mr. Wallace's attorneys requested that he be allowed to withdraw, which this Court granted. His other attorney eventually made the same request. From that point Mr. Wallace represented himself once again.
¶ 7 During the pendency of this matter, Mr. Wallace has purported to remove this case to federal court, not to a court within the 10th Circuit, but to two federal district courts, first to the United States District Court for the District of Columbia. That court issued a memorandum opinion on March 30, 2007. The D.C. court denied the removal and pursuant to Rule 11 of the Federal Rules of Civil Procedure, sanctioned Mr. Wallace by "enjoining him from filing any additional pleading, motion or other paper relating to the subject of this litigation in the United States District Court for the District of Columbia."[4] In footnote 1 of the opinion, that court stated,
"Because of an extensive frivolous and abusive litigation strategy employed by the plaintiff, he has been enjoined by several Oklahoma courts from filing lawsuits. For example, a State Court has enjoined the plaintiff from filing further lawsuits `based upon any allegations of acts, events, transactions, or circumstances in any manner related to or concerning the Trusts or the Trustees, in any capacity' except in the District Court of Tulsa County, Oklahoma. . . . The federal Bankruptcy Court for the Northern District of Oklahoma has issued a similar order against the plaintiff. In re Wallace, 288 B.R. 139 (Bankr. N.D. Okla. 2002)."
¶ 8 In the D. C. court's denial of removal, it reasoned that pursuant to 28 U.S.C. §§ 1441(a) and 1446(a) (2000), only a defendant may remove a case from a state court to federal court.[5] The federal court cited related suits filed by Mr. Wallace in the D.C. court on the same subject matter.[6] The court concluded by finding that from the nature and number of pleadings filed before that court and elsewhere that Mr. Wallace somewhat understood the judicial process and the previous orders that had been issued against him, but he remained undeterred in pursuing litigation in the District of Columbia. The court found that Mr. Wallace had shown contempt for the integrity of the judicial process by ignoring the injunctions entered against him by various courts that preclude certain further court filings, and ignored the multiple orders that had transferred his claims submitted to the D.C. court to the United States District Court for the Northern District of Oklahoma. "The plaintiff has wasted the time and money of all parties that have been subject to his repeated assault of unfounded and identical lawsuits, in a manner that can only be described as an attempt to harass and unduly delay the lawful proceedings of the Oklahoma Courts."[7]
¶ 9 The D.C. court sanctioned Mr. Wallace by enjoining him from filing any lawsuits in that court "of any kind concerning the actions, circumstances, transactions, or other events against the named defendants or any related parties with respect to the Lorice T. Wallace Revocable Trust, the Lorice T. Wallace Life Insurance Trust, the Lisa Frances Wallace Discretionary Spendthrift Trust or any other related actions."[8]
¶ 10 Despite the opinion of the United States District Court for the District of Columbia, which explained why federal law did not allow Mr. Wallace to remove the case from the Oklahoma courts to federal court, Mr. Wallace, on April 13, 2007, filed a "Notice of Removal and for Transfer of All Files Under Pauperis [sic] Status." He filed a "Complaint/Petition for Accounting and Appointment of Receiver" in the United States District Court Northern District of Texas Fort Worth Division.

II. JURISDICTION
¶ 11 Mr. Wallace raises jurisdictional issues in his brief-in-chief. Much of his brief is dedicated to these issues. However, these issues were a part of the appeal in Appeal Number 102,346. The opinion of the Court of Civil Appeals notes that one of the orders from which Mr. Wallace appealed was in District Court Case No. PT-2002-56.[9] The present appeal from the conviction for indirect contempt of court is also from District Court Case No. PT-2002-56.
¶ 12 On December 22, 2006, the Court of Civil Appeals held that the appellant (Mr. Wallace) failed to show in his brief any support for his claim that the trial court did not have subject matter jurisdiction, and added that the record plainly revealed that the trial court acted within its authority to supervise the administration of the trusts at issue.
¶ 13 On March 26, 2007, this Court denied a motion to vacate the opinion of the Court of Civil Appeals. That appeal was from the trial court's July 6, 2005, order, which granted the petitioners' motion for approval of a sale purchase agreement, and from the trial court's order of July 7, 2005,[10] for sale of real property. The two orders approved the sale of real property owned by two trusts of which Mr. Wallace was named a beneficiary. Among the petitioners were Ronald Saffa and The Trust Company of Oklahoma. That appeal provided an opportunity for Mr. Wallace to raise his jurisdictional issues. The decision of the Court of Civil Appeals is res judicata.[11]
¶ 14 This present appeal is from a contempt proceeding, which is ordinarily regarded as a collateral or separate action from the underlying case and separately appealable. Appellate review is limited to the contempt order itself. Lerma v. Wal-Mart Stores, Inc., 2006 OK 84, ¶ 8, 148 P.3d 880, 883.

III. FACIAL VALIDITY OF "ORDER FOR CONFINEMENT"
¶ 15 The appellant argues that the judgment and sentence entered for his indirect contempt of court is void on its face for failure to include the substance of the offense, pursuant to 21 O.S.2001, § 568.[12] Assuming for purposes of this argument that the judgment and sentence is the equivalent of "the order of his confinement" as recited in § 568, the appellant is incorrect.
¶ 16 On page 4 of the November 23, 2004, Judgment and Sentence for Indirect Contempt of Court, that document references how Mr. Wallace contemptuously commenced a lawsuit in the United States District Court for the District Court for the District of Columbia and maintained that suit for a period of 131 days. That language is sufficiently specific to satisfy the requirements of § 568.

IV. ACCESS TO THE COURTS
¶ 17 The District Court of Tulsa County entered its Temporary Restraining Order and Notice of Opportunity for Show Cause Hearing on April 21, 2004. The appellant next asserts that this order violated his constitutionally-protected right of "access to the courts" and is therefore not a lawful order within the meaning of 21 O.S.2001, § 565. That statute provides in pertinent part, "Indirect contempts of court shall consist of willful disobedience of any process or order lawfully issued or made by court; resistance willfully offered by any person to the execution of a lawful order or process of a court."
¶ 18 Article 2, § 6 of the Constitution of Oklahoma provides: "The courts of justice of the State shall be open to every person, and speedy and certain remedy afforded for every wrong and for every injury to person, property, or reputation; and right and justice shall be administered without sale, denial, delay, or prejudice." The Judgment and Sentence for Indirect Contempt of Court recites that Mr. Wallace filed a purported removal proceeding in the United States District Court for the District of Columbia delaying the sentencing of Mr. Wallace and that court remanded the cause to the District Court of Tulsa County, Oklahoma. Then Mr. Wallace filed another purported removal proceeding to the United States District Court for the Southern District of Texas, which the District Court of Tulsa County, Oklahoma, determined to be frivolous, in bad faith, and another attempt to delay the proceeding.
¶ 19 During this appeal Mr. Wallace has filed purported attempts to remove this appeal from this Court to the United States District Court for the District of Columbia, on March 6, 2006, and to United States District Court for Northern District of Texas, Fort Worth Division, on April 13, 2007. As mentioned above, the D.C. court found that Mr. Wallace had shown contempt for the integrity of the judicial process by ignoring the injunctions entered against him by various courts, which preclude certain further court filings. That court added that he had ignored multiple orders transferring his claims submitted to the D.C. court to the United States District Court for the Northern District Court of Oklahoma.[13] We agree with the D.C. court that Mr. Wallace has shown contempt for the integrity of the judicial process and additionally find that his attempts to remove this case from this Court to federal courts in the District of Columbia and the Northern District of Texas were frivolous, abusive, and bad faith attempts to delay the present appeal before this Court on the issue of his conviction for indirect contempt of court.
¶ 20 Oklahoma has long recognized the power inherent to the court to control its own docket. In Hambright v. City of Cleveland, 1960 OK 184, ¶ 15, 360 P.2d 493, 496, this Court observed: "Courts are created for the purpose of administering justice under the law. In order to accomplish that purpose, a court must, through necessity, have the power to facilitate and expedite causes before it so long as the reasonable exercise of these inherent powers does not prejudice the rights of parties involved." Mr. Wallace has abused this process by his constant frivolous filings of pleadings meant to delay, not further the administration of justice. His claim that he is being denied access to the courts is wholly without merit.

V. SUFFICIENCY OF THE EVIDENCE OF CONTEMPT
¶ 21 Mr. Wallace claims that the evidence does not support the verdict of the jury on his conviction for indirect contempt of court. Title 21 O.S.2001, § 565 defines indirect contempt as follows: "Indirect contempts of court shall consist of willful disobedience of any process or order lawfully issued or made by court; resistance willfully offered by any person to the execution of a lawful order or process of a court." The trial court correctly instructed the jury that the words "willful" and "willfully" meant "with knowledge, intentionally, designedly, without lawful excuse, and therefore not accidentally." By his assertion that there was no evidence he knew about the temporary restraining order, Mr. Wallace challenges the jury's determination that his actions consisted of willful disobedience, since that was a necessary element of indirect contempt for which the jury convicted him.
¶ 22 Because the jury was instructed and came to a verdict of guilty of indirect contempt, it came to a different conclusion than Mr. Wallace. Mr. Wallace cites nothing in his brief other than a bald assertion that the evidence was insufficient. His assertion of the insufficiency of the evidence is without merit.
¶ 23 Additionally, Mr. Wallace failed to include the jury trial transcript in the record on appeal. As a result, this Court has nothing to review with regard to testimony of the witnesses. "Legal error may not be presumed from a silent record; it must be affirmatively demonstrated." First Federal Savings and Loan Ass'n, Chickasha, Oklahoma, v. Nath, 1992 OK 129, ¶ 10, 839 P.2d 1336, 1342. The appellant is responsible for incorporating into the appellate record all materials necessary to secure corrective relief from the trial court's adverse decision. Davidson v. Gregory, 1989 OK 87, ¶ 8, 780 P.2d 679, 682.

VI. PROVISION FOR SUSPENDED SENTENCE
¶ 24 Mr. Wallace protests the provision in the judgment that would suspend 39 days in jail if he agrees to submit to a psychiatric examination, cooperate with the examiner and make a report to the district court concerning the examination. We initially note that Mr. Wallace is not compelled to submit to the examination, but may choose to spend the 39 days in jail. But the authority of the district court to provide for such a suspension is found in 22 O.S.Supp.2008, § 991a(A)(1)(p).
¶ 25 The judgment for indirect contempt of court was dated November 22, 2004. At that time the statute provisions of § 991a(A)(1)(p) were identical to the present form of the statute.[14] They provide that when a defendant is convicted of a crime and no death sentence is imposed, the court shall either suspend the execution of the sentence in whole or in part, with or without probation, and may order the convicted defendant at the time of sentencing or at any time during the suspended sentence to do one or more of the following, which subsection includes treatment for any conditions, behaviors, deficiencies or disorders that may contribute to criminal conduct including mental and emotional health evaluations. This provides the authority for the deferred sentence offered to Mr. Wallace.

VII. RIGHT TO AN ATTORNEY
¶ 26 Mr. Wallace asserts that he was denied his fundamental right to assistance of counsel guaranteed by the Sixth Amendment. The record clearly reveals that Mr. Wallace gave a knowing, intelligent, competent waiver of his right to assistance of counsel. During the September 2, 2004, pretrial conference, the trial court explained his rights to an attorney to him. Mr. Wallace made it clear he wanted to represent himself, but equivocated by asking for an attorney to help him with his research and prepare for the jury trial. After an exchange of questions and answers, the court finally asked: "Now, back to my question, because I want to make sure this is a knowing and intelligent waiver, Mr. Wallace. You as I understand it, are waiving your right to counsel to defend you in this upcoming civil contempt matter; is that correct?" Mr. Wallace answered: "That's correct."[15]
¶ 27 The Oklahoma Court of Criminal Appeals has long held that a defendant is entitled to representation by an attorney or to represent himself. However, he is not entitled to hybrid representation. Brown v. State, 1997 OK CR 1, ¶ 43, 933 P.2d 316, 326.[16] "The Sixth Amendment does not give any indication that hybrid representation is a right of constitutional dimensions." United States v. Hill, 526 F.2d 1019, 1025 (10th Cir. 1975), cert. denied, 425 U.S. 940, 96 S.Ct. 1676, 48 L.Ed.2d 182 (1976). The trial court did not err in denying Mr. Wallace such representation.

VIII. OTHER RELIEF
¶ 28 Mr. Wallace filed numerous other pleadings in this matter so that at one point in the order of September 28, 2005, this Court noted "daily, lengthy, repetitive motions, responses and replies." In addition, in his brief-in-chief the appellant references appeals and petitions for relief filed by him on a variety of issues before this Court. These issues are collateral to the basic question presently before this Court, and will not be reviewed in this case. The basic question before this Court concerned Mr. Wallace's conviction for indirect contempt. The Court having addressed the issues raised in the appellate briefs finds that other relief sought by Mr. Wallace or by the appellees should be and is denied.

AFFIRMED.
ALL JUSTICES CONCUR.
NOTES
[1] This case was retained after the judges from both the Tulsa and Oklahoma City Courts of Appeals disqualified.
[2] "Issues raised in the Petition in Error but omitted from the brief may be deemed waived. Argument without supporting authority will not be considered." Okla.Sup.Ct.R. 1.11(k)(1), 12 O.S.2001, ch. 15, app. 1.
[3] The court calculated the fine as the sum of $200.00 per day for 131 days, pursuant to 12 O.S.2001, § 1390, for the time during which Mr. Wallace maintained the lawsuit contemptuously commenced in the United States District Court for the District of Columbia. That section provides:

"An injunction granted by a judge may be enforced as the act of the court. Disobedience of any injunction may be punished as a contempt, by the court or any judge who might have granted it in vacation. An attachment may be issued by the court or judge, upon being satisfied, by affidavit, of the breach of the injunction, against the party guilty of the same, who may be required to make immediate restitution to the party injured, and give further security to obey the injunction; or, in default thereof, he may be committed to close custody, until he shall fully comply with such requirements, or be otherwise legally discharged, or be punished by fine not exceeding Two Hundred Dollars ($200.00) for each day of contempt, to be paid into the court fund, or by confinement in the county jail for not longer than six (6) months, or by both such fine and imprisonment. This act shall in no way alter the right to trial by jury."
[4] Page 1 of Memorandum Opinion of the United States District Court for the District of Columbia.
[5] The D.C. court cited Shamrock Oil & Gas v. Sheets, 313 U.S. 100, 106 (1941) and observed that the proscription exists because the plaintiff submitted himself to the jurisdiction of the state court and was not entitled to avail himself of a right of removal conferred only on a defendant who has not submitted himself to the jurisdiction. The rationale for the rule is that the plaintiff who brings a federally cognizable action in state court was free to choose his forum and selected the state forum. The D.C. court cites General Motors Corp. v. Gunn, 752 F.Supp. 729, 730 (N.D. Miss. 1990).
[6] The court listed Docket No. 01:06-1264-RBW, and No. 01:06-1817-RBW, footnote 2 of the Memorandum Opinion of the United States District Court for the District of Columbia. And in footnote 3 of the opinion, the court noted that the plaintiff had previously brought hybrid notices of removal and civil rights claims on the same grounds in Wallace v. Department of Health and Human Services, No. 1:04-cv-0713-ESH (D.D.C. July 20, 2004) and Wallace v. Poe, No. 01:04-cv-1717-RWR (D.D.C. February 28, 2005). Both cases were transferred to the Northern District of Oklahoma, which the D.C. court noted "would be the appropriate jurisdiction for the removal of the plaintiff's claims, but it is highly doubtful that any federal court can exercise jurisdiction over any of the plaintiff's claims."
[7] Pages 3 and 4 of Memorandum Opinion of the United States District Court for the District of Columbia.
[8] Page 5 of Memorandum Opinion of the United States District Court for the District of Columbia.
[9] Page 2, footnote 1, of the Court of Civil Appeals opinion, Case No. 102,346.
[10] District Court Case No. PT-2003-46; page 2, footnote 1 of the opinion of the Court of Civil Appeals, Case No. 102,346.
[11] Res judicata operates to bar all theories and all issues of fact or law that were litigated or which could have been litigated. Mobbs v. City of Lehigh, 1982 OK 149, ¶ 6, n. 5, 655 P.2d 547, 549.
[12] Title 21 O.S.2001, § 568 provides: "Whenever a person shall be imprisoned for contempt the substance of the offense shall be set forth in the order for his confinement, and made a matter of record in the court."
[13] Page 4 of Memorandum Opinion of the United States District Court for the District of Columbia.
[14] 2004 Okla.Sess.Laws, ch. 418, § 2.
[15] September 2, 2004, Transcript, page 25, lines 2-13.
[16] "A party to an action who is represented by counsel of record may not act independently as his own attorney in the case." Watson v. Gibson Capital, L.L.C., 2008 OK 56, ¶ 13, 187 P.3d 735, 739.