Douglas D. REEVES and Carol Ann Reeves, Appellants–Plaintiffs,

v.

Alan AGEE and Lamar Lawson, Appellees–Defendants.

No. 60289.

Supreme Court of Oklahoma.

Feb. 14, 1989.

As Corrected Feb. 24, 1989.

Bert B. Barefoot, Jr., John A. Claro, Joseph A. Claro, Messrs. Barefoot, Moler & Claro, Oklahoma City, for appellants-plaintiffs.

John B. Hayes, Messrs. Looney, Nichols, Johnson & Hayes, Oklahoma City, for appellee-defendant Alan Agee.

Alan Agee, Messrs. Garvin, Agee & Meisel, Pauls Valley, for appellee-defendant Lamar Lawson.

OPALA, Vice Chief Justice.

In a malicious prosecution action, in which judgment was rendered on the defendants' demurrers to the petition and the plaintiffs' new trial motion was denied, the issues presented for decision are: 1) Were the errors committed in the malicious prosecution suit preserved for our review by specific allegations in the plaintiffs' new trial motion or by argument presented in open court and without objection at the hearing of that motion? 2) Were the present plaintiffs a "prevailing party" in the former suit, with legal status to bring a malicious prosecution action? 3) Was the challenged malicious prosecution petition vulnerable to defendant-Agee's demurrer for want of an allegation that the antecedent suit had been brought without probable cause? 4) Was the petition facially untimely under the applicable statute of limitations? 5) Was the defendants' interposition of a supervening-cause barrier to the plaintiffs' claim available as a ground for demurrer to the petition? and 6) Were errors in ruling on the slander-of-title theory of recovery preserved for our review? We answer the first and second questions in the affirmative, and the third, fourth, fifth and sixth in the negative.

THE ANATOMY OF LITIGATION

Douglas D. Reeves and Carol Ann Reeves [collectively called Reeves] brought a malicious prosecution action against Lamar Lawson [Supplier] and Lawson's legal counsel, Alan Agee [Agee or lawyer]. The trial court gave judgment to both defendants on their separate demurrers to the petition and denied Reeves' new trial motion.

A. *The Challenged Petition's Allegations*

Reeves were engaged in the cement block manufacturing business. During the period between 1972 and 1974 they had received and paid for sand sold to them by the Supplier on open account. Some of the sand delivered in 1972 was used for the construction of a building on Reeves' business property. In March 1975 the Supplier delivered for use in manufacturing cement blocks a load of contaminated sand; Reeves refused to pay both for that load as well as for some others—initially pure sand—that, after being intermixed with the later-furnished contaminated material, also became utterly unusable. The Supplier threatened to place a lien on Reeves' property unless the entire balance due were paid. At a meeting where the circumstances of Reeves' default were discussed, Reeves' then attorney informed the Supplier that the materials for which collection was sought were not lienable, though an action could be brought to recover their price on open account. Contrary to this advice, the Supplier, acting in concert with Agee, caused a lien to be placed on Reeves' property by means of a false statement reciting that some of the material for which payment was being sought had been

incorporated in a building on Reeves' premises.

Reeves had made arrangements to convey their plant premises to the First National Bank of Pauls Valley [Bank] in exchange for full release of a secured obligation. When prepared documents were scheduled for execution, the Supplier's lien claim surfaced and the Bank delayed closing so Reeves could have this cloud removed. Reeves then met with Agee and disclosed to him all the facts showing the lien statement to be false and the Supplier's claim to have been impressed for the purpose of coercing Reeves' payment of an "unjust open account debt." Agee also became aware that the lien was blocking Reeves' transfer of the premises to the Bank. The Supplier and Agee reacted by amending the original lien statement to allege that the sales contract with Reeves had its inception three years earlier. With full knowledge of the falsity of the original and the amended lien statements, the Supplier and Agee, acting in concert and conspiracy, caused a foreclosure suit to be brought against Reeves and the Bank, with the malicious intent of 'tieing up' Reeves' real estate. The Supplier's foreclosure suit, instituted without probable cause and to secure priority over the Bank's first mortgage lien, destroyed Reeves' opportunity to avoid further liability on their mortgage to the Bank by deeding the premises to the latter. The Bank then pressed its suit for mortgage foreclosure and later secured a deficiency judgment.

The trial court adjudged on August 31, 1978 that the Supplier had no materialmen's lien claim against Reeves' property. *Reeves rely on this ruling, from which no appeal was lodged, as the successful termination of the antecedent litigation and the foundation for their malicious prosecution action.* The essence of Reeves' claim is that the Supplier wrongfully encumbered their property with a false lien for more than two years, which prevented them from escaping the legal consequences of impending foreclosure. Actual damages, alleged to be $57,087.28 (the amount the Bank would have taken for the property had it been unencumbered), and punitive damages of $150,000 were sought.

B. *The Trial Court's Judgment on Demurrers and its Postjudgment ruling on New Trial Motion*

On January 7, 1983 the trial court gave judgment to Agee and to the Supplier on their separate demurrers to the petition,[1] assigning but one reason for its decision— the antecedent Supplier's lien foreclosure suit against Reeves did not terminate in Reeves' favor. Taking judicial notice of that suit, to which reference was made in Reeves' petition, the trial court ruled that the Supplier was the only prevailing party in the prior case. He was the one awarded the full amount of recovery on open account even though his lien claim was later defeated.[2] When the successor judge denied Reeves' new trial motion on May 3, 1983, he added two other reasons for the earlier judgment—(1) the malicious prosecution action was time-barred; and (2) as a matter of law, there could be no causal connection between the Supplier's filing of a materialmen's lien statement and Reeves' allegedly lost opportunity to give the Bank a cloud-free title in the mortgaged premises. We now reverse the nisi prius decision and remand the cause for further proceedings.

1. The Supplier's general demurrer assailed the petition for its failure to allege facts sufficient to constitute a cause of action.
 Agee's demurrer was based on the petition's failure to state a cause of action for lack of two essential elements of a malicious prosecution claim: (1) that the Supplier's action against Reeves terminated in Reeves' favor and (2) that the Supplier lacked probable cause for bringing the lien foreclosure suit. Agee takes the position that as the Supplier's lawyer (a) he cannot be held liable to third parties for his client's negligence and (b) because he was totally justified in believing his client's version rather than accepting that of Reeves, the requisite lack of probable cause element is missing from Reeves' petition. The trial court's order denying a new trial did not address the probable cause issue; instead, it held the action was barred by limitation and Reeves were not a prevailing party in the former suit.

2. See *infra* notes 24 and 25.

This case, decided under the Code of Civil Procedure,[3] is governed and must be reviewed according to the norms of that procedural regime, although it has since been repealed and now stands replaced by the Oklahoma Pleading Code.[4]

## C. *Interconnected Appellate Litigation*

The Supplier's suit spawned a number of interconnected appellate litigation, all initiated by Reeves. The first of these was their unsuccessful appeal from a default ruling for the Supplier on the money phase of the claim, rendered after Reeves had failed to appear at trial and to present a defense [*Reeves I*].[5] Reeves' second appeal from the deficiency judgment for the Bank also met with an adverse outcome [*Reeves II*].[6] The present appeal is from judgment on the defendants' demurrers in Reeves' malicious prosecution action against the Supplier and Agee for pressing a false lien claim [*Reeves III*].

### I

## THE APPEAL IS NOT DISMISSIBLE FOR REEVES' FAILURE TO PRESERVE ERRORS IN THEIR NEW TRIAL MOTION

■ The Supplier and Agee urge this appeal is dismissible because the errors in the resolution of the malicious prosecution claim, which they present for review, were not preserved by specific allegations in Reeves' new trial motion.

The critical ground on which Reeves' new trial motion rests is:

"The Court committed fundamental error in that its decision is contrary to law; the Petition of plaintiffs is not demurrable on its face as a matter of law." [7]

The trial court's judgment on the defendants' demurrers was not rendered in open court and had not been reduced to writing when the new trial motion was filed. Reeves urge that because they did not know the precise basis for the decision when it came to be rendered, they alleged error in terms broad enough to encompass any ground the trial court might have chosen. The ruling stood memorialized when the motion was later reached for hearing. The *sole* basis assigned as a ground for the decision was that one element of an actionable malicious prosecution claim was missing—Reeves did not prevail in the Supplier's earlier suit.

■ While a party need not press for a new trial to bring an appeal from an adverse decision,[8] if a motion is filed, the

---

3. 12 O.S.1981 §§ 1 et seq. (now repealed, Okl. Sess.L.1984, Ch. 164, and replaced by the Oklahoma Pleading Code, 12 O.S.Supp.1984 §§ 2001 et seq., which became effective November 1, 1984).

4. 12 O.S.Supp.1984 §§ 2001 et seq. (Okl.Sess.L. 1984, Ch. 164, §§ 1 et seq., effective November 1, 1984). See Rule 1, Rules for District Courts of Oklahoma, 12 O.S.Supp.1985, Ch. 2, App., for guidance as to the applicability of the old and new procedural regimes.

5. *Lamar Lawson v. Douglas D. Reeves and Carol Ann Reeves d/b/a Republic Block & Supply Company*, No. 54,314, July 20, 1982 (unpublished Court of Appeals opinion) [*Reeves I*].

6. *Lamar Lawson v. Douglas D. Reeves and Carol Ann Reeves, d/b/a Republic Block & Supply Company and First National Bank of Pauls Valley, Pauls Valley, Oklahoma, a corporation*, No. 56,164, July 27, 1982 (unpublished Court of Appeals opinion) [*Reeves II*]. The Bank's deficiency judgment of $50,885.37 was affirmed on appeal.

7. Other grounds of error urged by Reeves' new trial motion include:

"(b) The Court failed to memorialize and file an order setting forth the reason or reasons for which the demurrer was sustained all in violation of certain provisions contained in Title 12 O.S., Chap. 2, App., Rule 4. (d) [sic] Court abused sound judicial discretion by failing to provide plaintiffs additional time within which to further plead after sustaining the demurrer; further, the Court's failure to memorialize and file an order setting forth the grounds upon which the demurrer was sustained prevented plaintiffs from amending their pleadings so as to state a cause of action even if the Court had given the plaintiffs some guidelines as to why the demurrer was sustained."

8. The terms of 12 O.S. 1981 § 991(a) provide:

"The *right* of a party *to perfect an appeal from a judgment, order or decree* of the trial court to the Supreme Court *shall not be conditioned upon* his *having filed* in the trial court *a motion for a new trial*, but in the event a motion for a new trial is filed in the trial

movant may not urge on appeal any error that, though available when a new trial motion was filed, was not stated in it.[9] A new trial motion is insufficient unless its allegations inform the trial court of the specific defects in the antecedent judicial process, which avail by statute as grounds for securing the relief sought.[10] At the hearing of a motion, lack of specificity may be cured if the movant precisely identifies each point of law that is fairly comprised within the general allegations of the defective new trial motion and the particularized explanatory comments draw no objection from the opposing party.[11]

■ The trial judge's successor presided at the hearing on the new trial motion.[12] Each specific defect sought to be invoked as a ground for new trial—all of them fairly comprised within the general allegations of Reeves' motion—was argued without objection. The order denying the motion recites two additional grounds to support the judgment on the defendants' demurrers. Reeves' petition-in-error and brief-in-chief assign as error each of the grounds given by the trial court in its ruling on motion for new trial.[13] The errors urged on appeal were hence properly preserved for our review.

court by a party adversely affected by the judgment, order or decree, no appeal to the Supreme Court may be taken until subsequent to the ruling by the trial court on the motion for a new trial. This provision shall not apply, however, to an appeal from an order of the Corporation Commission." [Emphasis added.]

9. The terms of 12 O.S.1981 § 991(b) provide:
"If a motion for a new trial be filed and a new trial be denied, the *movant may not, on the appeal, raise allegations of error that were available to him at the time of the filing of his motion for a new trial but were not therein asserted.*" [Emphasis added.]
See also *Horizons, Inc. v. KEO Leasing Co.,* infra, note 11 at 759, and *Faulkenberry v. Kansas City Southern Ry. Co.,* Okl., 661 P.2d 510, 513 [1983].

10. *Federal Corp. v. Ind. School Dist., Etc.,* Okl. App., 606 P.2d 1141, 1143–1144 [1980] and *Huff v. Huff,* Okl., 687 P.2d 130, 131–132 [1984].

11. *Horizons, Inc. v. KEO Leasing Co.,* Okl., 681 P.2d 757, 759 [1984].

12. If a trial judge retires after judgment is rendered, his successor in office may pass upon a timely filed motion for new trial. *Wilson v. Oklahoma Ry. Co.,* Okl., 248 P.2d 1014, 1020 [1952].

13. Errors asserted in Reeves' amended petition-in-error are:
"1. The Court erred in failing to find that plaintiffs were prevailing parties in the first action capable of bringing a malicious prosecution action, by virtue of the first court's finding that the defendants' lien claim was invalid.
2. The Court erred in finding the plaintiffs' suit, filed on July 11, 1979, to be barred by the Statute of Limitations by finding that plaintiffs' suit related to an Order of May 1, 1978 concerning the money judgment issue, rather than an Order of August 31, 1978 concerning the validity of a lien claim.

3. The Court erred in failing to find defendant Agee, as the attorney for defendant Lawson in the former civil action, may be held liable for malicious prosecution.
4. The Court erred in finding that plaintiffs' Petition stated a negligence action rather than a malicious prosecution claim against defendant Agee.
5. The Court erred in finding no possible causal connection between plaintiffs' inability to convey marketable title to their property and the invalidity of the lien claim of Lamar Lawson.
6. The Court erred in finding that there were no disputed facts in question, and therefore, allowing the Demurrer to be sustained."
Errors asserted in Reeves' brief-in-chief are:
1. "The trial court could not properly sustain the appellees' general demurrers if any facts entitling the Reeves to any relief were stated in the Reeves petition."
2. "The Reeves' petition stated facts sufficient to satisfy all of the elements of a valid cause of action under a malicious prosecution theory and thus was not vulnerable to defendants/appellees' general demurrers."
3. "The Reeves' petition stated facts sufficient to satisfy all the elements of a valid cause of action under a slander of title theory and thus, was not vulnerable to defendants/appellees' general demurrers."
4. "The trial court's finding that the Reeves' petition could not be amended to state a cause of action and the court's failure to timely state the grounds upon which the demurrers were sustained prevented the Reeves from amending their petition and constituted error."
5. "Appellee Agee, acting as counsel for appellee Lawson in the prior action, is liable for his personal actions under either a malicious prosecution or a slander of title theory."
6. "Appellants' petition was filed in time to satisfy the statute of limitations under either a malicious prosecution or slander of title theory, and thus, was not vulnerable to appellees' demurrers."

## II

### THE RECORD SUPPORTS REEVES' STATUS AS A PREVAILING PARTY IN THE FORMER SUIT

█ In a malicious prosecution action the plaintiff must allege and prove these elements: 1) the defendant's institution of the former action; 2) its termination in plaintiff's favor; 3) the defendant's want of probable cause for pressing the former suit against the plaintiff; 4) the presence of malice in defendant's conduct; and 5) damages.[14]

█ The order denying new trial held the second element was absent as a matter of law because Reeves did not prevail in the former action. Taking judicial notice of the judgment roll in the prior suit,[15] the trial court ruled that the Supplier had sought to recover on two theories—a money claim for the unpaid account and a materialmen's lien claim in the same sum. It also concluded that, although on May 1, 1978 the trial court had ruled in Supplier's favor on the money claim phase of the suit, Reeves later prevailed in their defense against the impression of a lien claim.

█ A demurrer cannot reach beyond the four corners of the tested pleading and those parts of the judgment roll[16] in some other finally terminated case before the same court to which reference is made in that pleading.[17] The function of

---

**14.** *Young v. First State Bank, Watonga,* Okl., 628 P.2d 707, 709 [1981]; see also *Glasgow v. Fox,* Okl., 757 P.2d 836, 838 [1988].

**15.** The journal entry of judgment on demurrers states that the trial court "takes judicial notice of the prior action upon which this action is based, the case styled *Lamar Lawson v. Douglas D. Reeves, et al.,* Case No. C–76–120 in the District Court of Garvin County, Oklahoma, in which the plaintiff therein, Lamar Lawson, obtained a judgment on May 1, 1978, against the defendants, ... for the full amount prayed for although the lien which the plaintiff therein sought to enforce and foreclose was denied." Judicial notice—the court's cognizance of adjudicative facts without any proof—is part of our evidence law. See Oklahoma Evidence Code, 12 O.S. 1981 §§ 2202 and 2203. The doctrine varies with several of its distinct applications. [I] When the rule is invoked for general *evidentiary purposes,* the *trial court* has the power to dispense with proof of *judicially cognizable adjudicative facts.* Included in the ever expanding litany of things covered by judicial notice are matters of "common and general knowledge" that are "well established and authoritatively settled." *Boatman v. Coverdale,* 80 Okl. 9, 193 P. 874, 875 [1920]; see 12 O.S. 1981 § 2202. [II] While generally a trial court may take judicial notice of its own records and proceedings, *McGee v. Campbell,* 202 Okl. 624, 217 P.2d 174, 177 [1950], a *more restrictive* application of the doctrine governed under the now-repealed Code of Civil Procedure, *supra* note 3, when rulings were sought on *demurrers to a pleading.* Because the demurrer tested only the four corners of a challenged pleading, judicial notice *stood limited in that context* to matters *tendered by* the pleading's text or by reference *aliunde* found in its body. See *infra* note 17 and the cited cases. [III] Another restrictive application governs when *judicial notice* is relied on to supplement the record before a reviewing court. While an appellate court may take judicial notice *of its own records,* see cases *infra* note 40, it cannot notice material which, though properly available for notice by the trial court whence the case came, has not been incorporated into the record on appeal. See text and cases *infra* notes 19 and 23.

**16.** The judgment roll, which is synonymous with "record proper," consists of "... the petition, the process, return, the pleadings subsequent thereto, reports, verdicts, orders, judgments, and all material acts and proceedings of the court; ..."; 12 O.S.1981 § 32.1, renumbered in 1972 from 12 O.S.1971 § 704, Okl.Sess.L. 1972, Ch. 119, § 5; *Timmons v. Royal Globe Ins. Co.,* Okl., 713 P.2d 589, 591, n. 10 [1986]; *Veiser v. Armstrong,* Okl., 688 P.2d 796, 800 [1984] and *Mid-Continent Pipe Line Co. v. Seminole C. Excise Board,* 194 Okl. 40, 146 P.2d 996, 1000 [1944].

The legal effect of a finally adjudicated case is measured by the four corners of its judgment roll, and, in making this assessment, no other part of a terminated case can be considered. *Timmons v. Royal Globe Ins. Co., supra,* and *Mayhue v. Mayhue,* Okl., 706 P.2d 890, 895 [1985].

**17.** *James v. Unknown Trustees, Etc.,* 203 Okl. 312, 220 P.2d 831, 834 [1950] (the court distinguished those cases in which pleadings challenged by demurrer do not refer to any former cases involving the same parties or some related subject matter); *Morgan v. Whitehead,* 196 Okl. 402, 165 P.2d 338, 341 [1946]; *Corliss v. Davidson & Case Lumber Co.,* 183 Okl. 618, 84 P.2d 7, 10 [1938] and *Schneider v. Decker,* 144 Okl. 213, 291 P. 80, 81 [1930]. See also *State ex rel. Cartwright v. Tidmore,* Okl. 674 P.2d 14, 17 [1983] and *Fibikowski v. Fibikowski,* 185 Okl. 520, 94 P.2d 921, 926 [1939] (a trial court cannot take judicial notice of the record in cases brought in another court).

demurrer is to test the legal sufficiency of a plead cause of action or defense.[18]

An appellate court cannot take judicial notice of material which, though properly available for notice by the trial court, has not been incorporated into the record on appeal.[19] Admissions made in the briefs may be considered as supplementing and curing an otherwise deficient appellate record.[20]

The challenged petition does not inform us either that money recovery had been sought in the Supplier's earlier suit or that it was secured on May 1, 1978.[21] That pleading recites merely that the foreclosure phase of the Supplier's claim terminated in a ruling for Reeves. The petition's reference to the Supplier's suit doubtless authorized the trial court to look beyond the four corners of the chal-lenged petition to consider, in ruling on defendants' demurrers, the judgment roll in the earlier case and to take judicial no-tice of its content.[22] Because the judgment roll in the earlier suit has not been included in the appellate record tendered for our review in this appeal, there is here abso-lutely no record from the prior case for our consideration.[23] The parties *unequivocally admit in their briefs* that the trial court ruled on May 1, 1978 [24] for the Supplier on the latter's claim for money, while the lien phase of the dispute, later resolved in Reeves' favor, was decided on August 31, 1978.[25] Were it not for these critical ad-missions in the parties' briefs, failure to incorporate the judgment roll from the ear-lier suit would have been fatal to Reeves' appeal.[26] Without the admitted facts, we would be compelled to affirm because the

---

18. *Roberts v. Barclay,* Okl., 369 P.2d 808, 809 [1962]; *Nutt v. Carson,* Okl., 340 P.2d 260, 261 [1959] and *White v. Wint,* Okl., 638 P.2d 1109, 1112 [1982].

19. *Eckel v. Adair,* Okl., 698 P.2d 921, 924 [1985]; and *Sooner Federal Sav. & Loan Ass'n. v. Mob-ley, infra* note 23 at 1004. Error may not be presumed from a silent record. The appellant must affirmatively demonstrate its presence. *Eckel v. Adair, supra* at 924; see also *Wilson–Harris v. Southwest Telephone Co.,* 193 Okl. 194, 141 P.2d 986, 989–990 [1943]. When error is not shown, or its presence cannot be ascer-tained from an incomplete, deficient or equivo-cal record, an appellate court *must always yield* to the law's presumption that the trial court's decision is legally correct. *Hamid v. Sew Origi-nal,* Okl., 645 P.2d 496, 497 [1982] and *Eckel v. Adair, supra.*

20. *Womack v. City of Oklahoma City,* Okl., 726 P.2d 1178, 1181 [1986]; *Timmons v. Royal Globe Ins., supra* note 16 at 592, note 10; *Norris v. Norris,* Okl., 695 P.2d 506, 507 [1984]; *Green-wood v. Lyles & Buckner, Inc.,* Okl., 329 P.2d 1063, 1067 [1958] and *Ramer v. State,* Okl., 302 P.2d 139, 140 [1956].

21. See *infra* note 50 for discussion of the May 1, 1978 ruling's status as a money judgment.

22. Reeves' petition alleges in paragraph 18 that the Supplier's "suit sought to foreclose the 'lien'" and "was filed in the District Court ... Garvin County, ... and was numbered C–76–120." According to paragraph 22, "the District Court ... Garvin County entered judgment against the Defendant Lawson on the bogus lien claim asserted in No. C–76–120 ... as follows: 'The Court finds that under the evidence and the laws of the State of Oklahoma, that the plaintiff, Lamar Lawson, is not entitled to a material-man's lien and has no right, title, interest, estate, equity or lien in and to or upon the below described property by virtue of said claimed materialman's lien.'"

23. When former proceedings in another case before the same court, of which a trial court may take judicial notice, are incorporated in the record, all such proceedings may be reviewed on appeal. *Eckel v. Adair, supra* note 19 at 923; and *Wilson–Harris v. Southwest Telephone Co., supra* note 19, 141 P.2d at 989–990; see also *Sooner Federal Sav. & Loan Ass'n. v. Mobley,* Okl., 645 P.2d 1000, 1004 [1982] (supp. opinion on rehearing).

24. See Agee's answer brief, pgs 6, 10, 11 and 28, and Supplier's brief, p. 1, adopting Agee's brief. We also note from the recitation of facts in *Reeves I, supra* note 5, that on May 1, 1978 the Supplier recovered $1,302 on its money claim and, at a later date, was awarded counsel fees of $2,500. This ruling was affirmed on appeal in *Reeves I, supra* note 5. An appellate court may take judicial notice of its own records in litiga-tion that is interconnected with the case on review, see *infra* note 40.

25. See Agee's answer brief, pgs 6, 10, 11 and 28, and Supplier's brief, p. 1, adopting Agee's brief.

26. In the absence of the judgment roll showing the critical dates, we would be compelled to presume that the judgment was supported by the complete record and to apply to the court's ruling the mandated presumption of correct-ness. *Timmons v. Royal Globe Ins. Co., supra* note 16; see also *Hamid v. Sew Original, supra* note 19 at 497 and *Eckel v. Adair, supra* note 19 at 923.

record·would be insufficient to pass on the dispositive prevailing-party-status and the bar-of-limitation issues. A presumption of correctness attaches to the trial court's ruling and, without the entire judgment roll of the Supplier's former suit, we would have to assume that the decision here on review, based as it was on matters dehors the appellate record now before us, was indeed correctly reached.[27] Inasmuch as the critical extra-record facts, which stand admitted in the parties' briefs, may be regarded as supplementing the incomplete appellate record [28] and are ample to supply the deficiency, the errors Reeves urge for reversal can undergo appellate scrutiny.

◼ When a plaintiff's suit alternately invokes two remedies for vindication of a *single* cause of action—e.g., a common-law claim for money and an equitable claim for foreclosure of a lien—the resolution of each alternate remedy may bring forth a different prevailing party. In *The Compa-*

ny, *Inc. v. Trion Energy*[29] the plaintiff brought a civil claim seeking two alternate remedies—either money recovery for rent due with damages to rental equipment, or lien impression with foreclosure. The trial court ruled in favor of the plaintiff on the first-invoked remedy and for the defendant on the second. The party prevailing in each remedy phase was awarded counsel fees—the plaintiff's award came to be rested upon contract and the defendant's was premised on the authority of 42 O.S. 1981 § 176.[30] The defendant's counsel-fee award was affirmed on appeal, the court holding that when two distinct remedies are pressed, there may be a different prevailing party on each.[31]

Because in the Supplier's suit Reeves, much like the defendant in *Trion*, defeated the lien claim against their premises, we hold that they were entitled to a prevailing-party status for the institution of their malicious prosecution action.[32]

---

27. *Eckel v. Adair, supra* note 19 at 923, and *Hamid v. Sew Original, supra* note 19 at 497.

28. *Womack v. City of Oklahoma City, supra* note 20 and *Timmons v. Royal Globe Ins. Co., supra* note 16. See Part IV, *infra,* for discussion of a conflict between the parties' briefs and the recitation of facts in *Reeves I, supra* note 5, as to the date the lien foreclosure claim was actually decided.

29. Okl., 761 P.2d 470 [1988].

30. The terms of 42 O.S.1981 § 176 provide: "In an action brought to enforce any lien the party for whom judgment is rendered shall be entitled to recover a reasonable attorney's fee, to be fixed by the court, which shall be taxed as costs in the action."

31. The court in *The Company, Inc. v. Trion Energy, supra* note 29, relied on *Sooner Pipe & Supply Corporation v. Rehm,* Okl., 447 P.2d 758 [1968]. In *Rehm* the trial court ruled for the plaintiff on the money claim *ex contractu* but the defendant prevailed on the lien claim and was then awarded counsel fees pursuant to the terms of 42 O.S.*1961* § 176, the statute then in effect.

32. The result reached here is not without support in the jurisprudence of other jurisdictions, where one who partially prevails in the former action may be allowed to bring a malicious prosecution suit. See *March v. Cacioppo,* 37 Ill.App.2d 235, 185 N.E.2d 397, 402 [1962]; *First Shelby Nat. Bank v. Mitchell,* 406 So.2d 959, 962–963 [Ala.Civ.App.1981] and *Anolik v. Mar-*

covsky, 122 Pa.Super. 133, 186 A. 418, 419 [1936]. *Cacioppo* concerned a lessor's earlier wrongful suit against his lessees for unpaid past due rent, as well as for rent under an unexpired lease and for having garnished the lessees' bank account. The major portion of the suit concerning rent under an unexpired lease had been terminated in favor of the lessees before the malicious prosecution action was begun. The court found this termination sufficient to allow the lessees to bring their suit without waiting for the outcome of the still pending action for past rent. The court held that defendants in a malicious prosecution action will not stand absolved of liability merely because a portion of the earlier suit might terminate in their favor. The rule in *Cacioppo* is that when a substantial portion of the suit, the functional equivalent of a separate claim, has been decided against the malicious prosecution defendants, and when there is reason to believe that such a separate claim was prosecuted with malice and without probable cause, a malicious prosecution suit will be maintainable. Similarly, in *Mitchell,* a bank had brought repossession action against a mobile home tenant. Although the bank was granted prejudgment writ of seizure, the tenant was allowed to maintain possession of the home on paying the bank the remainder due under the lease-purchase agreement. The tenant brought a malicious prosecution action and the bank argued that its former repossession action did not terminate *in all respects* in the tenant's favor. Because the bank secured no more than a coerced compliance with the security agreement for the mobile home, the court concluded

## III

### REEVES' PETITION IS NOT CHALLENGEABLE BY DEMURRER FOR LACK OF OTHER REQUISITE ELEMENTS OF MALICIOUS PROSECUTION CLAIM

█ When a demurrer is sustained on a wrong ground, this court will consider all grounds assigned, and the judgment will nonetheless be affirmed if *any* of the grounds may be deemed to have been well taken.[33]

█ Agee's demurrer also challenges the petition for its failure to state that the Supplier's earlier action had been brought without probable cause.[34] His demurrer alleges this element of Reeves' malicious prosecution claim was not averred but rather was sought to be supplied by the allegation that Agee should have known his client was laying claim to an invalid lien. The order denying new trial does not address this issue. Instead, it states that although lawyers may under some circumstances be sued for malicious prosecution conducted in a client's behalf, the present action was time-barred and Reeves could not maintain it since they were not a prevailing party in the former suit.

We know of no rule which gives lawyers absolute immunity from liability for malicious prosecution.[35] A demurrer can reach

no more than issues of law apparent from the face of the pleading to which it is directed.[36] *Only* if the challenged pleading conceded *all* the critical facts, from which *but a single inference* could be drawn, would probable cause or lack of it ever present a pure question of law for the court.[37] Reeves' petition alleges that Agee was informed about Reeves' past dealings with the Supplier and that, armed with this information, the lawyer should have known there was no legal basis for a materialmen's lien claim. Whether Agee knew or should have known his client's lien claim was "bogus" or whether he acted in concert with the latter in a malicious endeavor to impress an invalid materialmen's lien presents a fact issue not reachable for resolution by Agee's demurrer.

## IV

### REEVES' MALICIOUS PROSECUTION ACTION IS NOT BARRED BY LIMITATION

█ Another reason assigned as a ground for the trial court's denial of new trial is that the malicious prosecution action was time-barred. The successor trial judge concluded that the time to bring Reeves' suit began to run May 1, 1978 when the Supplier secured a favorable deci-

---

the repossession suit was resolved in the tenant's favor.

**33.** *State v. Oklahoma City,* 67 Okl. 18, 168 P. 227 [1917] (syllabus 3); and *Fishencord v. Peterson,* 173 Okl. 382, 49 P.2d 128, 132 [1935].

**34.** See *supra* note 1 for the other grounds asserted in Agee's demurrer. The lack of probable cause element Reeves rely upon must be viewed as having had its inception with the filing of the Supplier's lien statement—that was the very beginning of the Supplier's quest to foreclose the claimed lien. See in this connection *First Nat. Bank of Pauls Valley v. Crudup,* Okl., 656 P.2d 914, 917 [1983].

**35.** See *Smith v. Aaron, Aaron, Schimberg & Hess,* 112 Ill.App.3d 653, 67 Ill.Dec. 775, 776, 445 N.E.2d 67, 68 [1983]. *Smith* holds that a legal practitioner, who acts knowing that his client has no just claim and that his client is actuated by illegal or malicious motives, may be liable for malicious prosecution. A lawyer cannot al-

ways be exonerated merely by showing that he followed his client's instructions.

**36.** See 12 O.S.1981 §§ 553 and 554 (now repealed, Okl.Sess.L.1984, Ch. 164, § 32); *Great American Insurance Company v. Watts,* Okl., 393 P.2d 236, 240 [1964]; *James v. Unknown Trustees, Etc., supra* note 17; and *Bristow v. Carrigar,* 37 Okl. 736, 132 P. 1108, 1109 [1913].
The terms of § 553 provided:
"An issue of law arises upon a *demurrer to the petition,* answer or reply, or to some part thereof." [Emphasis added.]
The terms of § 554 provided:
"An issue of fact arises: First, Upon a material allegation in the petition, controverted by the answer; or, second, upon new matter in the answer, controverted by the reply; or, third, upon new matter in the reply, which shall be considered as controverted by the defendant without further pleading."

**37.** *Lewis v. Crystal Gas Company,* Okl., 532 P.2d 431, 434 [1975].

sion on his claim for money. Because more than a year had lapsed between this ruling and the filing of the malicious prosecution suit on May 22, 1979, Reeves' action was viewed and held as barred by limitation.[38]

Comparing the facts recited in the *Reeves I* opinion[39] with the admissions in the appellate briefs,[40] we note a conflict as to the date when the Supplier's lien claim was decided. The Court of Appeals, which had the May 1, 1978 money claim decision under review, states in its opinion the lien claim ruling was reached the same day as the other.[41] The parties' briefs are *in complete agreement* that the lien claim issue, reserved on May 1 for a later resolution, did not come to be determined in Reeves' favor until August 31, 1978.

 Under the Code of Civil Procedure,[42] the procedural regime in force at the time this case was decided below, a defendant could raise by demurrer the de-

fense of limitation if the untimeliness of the action were apparent from the petition's four corners.[43] We noted in Part II, *supra*, that the trial judge properly took judicial notice of the judgment roll in the earlier Supplier's action when ruling on the demurrers and that *any fact either stipulated or admitted in the brief may be considered as an acceptable supplement to a deficient appellate record.*[44] Any such admitted fact would control *over* contrary recitation in an appellate opinion rendered in another case *unless* it was apparent from that opinion's context that the recited fact's consideration was necessary for the adjudication process to settle some point of law for the case at hand.[45] An appellate opinion has a binding effect *only* to the extent that it pronounces the settled law for the case.[46] It is clear to us that the May 1, 1978 recitation was not relevant to any point of law settled in *Reeves I*. We hence can look only to August 31, 1978 as

**38.** For the pertinent provisions of our statute of limitations, 12 O.S.1981 § 95(4), see *infra* note 48.

**39.** See *supra* note 5 for citation to *Reeves I*.

**40.** An appellate court can take judicial notice of its own records in litigation interconnected with an appeal before it. See *Timmons v. Royal Globe Ins. Co., supra* note 16; and *Chandler v. Denton*, Okl., 741 P.2d 855, 861–862 [1987].

**41.** The Court of Appeals' opinion in *Reeves I, supra* note 5, states that: "The court's judgment of May 1, 1978, held that Lawson *was not entitled to foreclose the materialman's lien but he was granted default judgment against the Reeves for the $1,302 account.*" [Emphasis supplied.]

**42.** For discussion of the old and new procedural regimes for pleading, see *supra* notes 3 and 4 and the text in Anatomy of Litigation (B), *supra*.

**43.** See 12 O.S.1981 § 267; *Lucas v. Ind. Public School Dist. No. 35*, Okl., 674 P.2d 1131, 1133 [1983]; *Howard v. Jeffrey*, 268 P.2d 897, 898 [1954]; *Tiger v. Brown*, 130 Okl. 83, 265 P. 124 (syllabus 1) [1928]; and *Martin v. Gassert*, 40 Okl. 608, 139 P. 1141, 1143 [1914].

**44.** See *Womack v. City of Oklahoma City, supra* note 20 at 1181; *Timmons v. Royal Globe Ins., supra* note 16 at 592; *Eckel v. Adair, supra* note

19 at 923 and discussion in text at *supra* notes 20 and 28. Admitted facts have a binding effect on the parties. See *Nanonka v. Hoskins*, Okl., 645 P.2d 507, 508 [1982] and *City of Lawton v. Lewis*, Okl., 566 P.2d 133, 134 [1977].

**45.** While the record on a prior appeal of the same action does not constitute a part of the record in the subsequent appeal, this court can take judicial cognizance of its former opinions to inform itself of the binding effect due its past pronouncements. *Sneed v. Yarbrough*, 164 Okl. 253, 23 P.2d 703, 705 [1933] and *Oklahoma City Electric, Gas & Power Co. v. Baumhoff*, 21 Okl. 503, 96 P. 758, 760 [1908]. This rule is but a narrow exception to the general norm by which, on consideration of the appeal, an appellate court is strictly limited to the record before it. See *Eckel v. Adair, supra* note 19 at 923–924.

**46.** The settled law of the case operates to bar relitigation of only those issues that have been settled by an appellate opinion. *Mobbs v. City of Lehigh*, Okl., 655 P.2d 547, 549, n. 5 [1982]. The critical recitation in the Court of Appeals' opinion was not for the purpose of settling the issues raised in that appeal. The opinion did not deal with any phase of the Supplier's lien claim. See also *Veiser v. Armstrong, supra* note 16 at 799; *Smith v. Owens*, Okl., 397 P.2d 673, 678 [1965] and *Board of Education v. Philadelphia Fire & Mar. Ins. Co.*, 156 Okl. 7, 9 P.2d 737, 738 [1932].

the date the lien claim issue came to be settled below.[47]

The trial court's postjudgment order here under review, which added the issue of limitation as an additional ground for rendering judgment on the defendants' demurrer, states that the time to bring Reeves' malicious prosecution suit began to run from the May 1 ruling. Agee and Supplier argue that Reeves' cause of action first arose when the Bank was no longer willing to accept a deed in lieu of foreclosure and that this occurred when the May 1, 1978 ruling became a money judgment lien on the property in contest.

As we view the applicable law, the question to be answered here is whether the one-year period to bring malicious prosecution suit[48] commenced when the trial court first ruled on the claim for money or when it later decided the lien claim. Generally, the limitation period begins to run at the termination of the earlier action that is alleged to have been maliciously brought.[49] Because the lien claim alone is asserted to be the malicious demand upon whose previous judicial rejection relief is now sought to be founded, and Reeves were indeed successful in defeating that claim, we hold the limitation period began to run on August 31, 1978 when the Supplier lost its quest to impress a lien. The malicious prosecution action, instituted less than a year later, was hence timely brought.

47. Had the critical facts for determination of the limitations issue not been admitted, we would have had to apply here the teaching of *Eckel v. Adair, supra* note 19. *Eckel* would have called for application of the presumption that the trial court's judgment was correct because no error came to be demonstrated by the appellate record before us.

48. The terms of 12 O.S.1981 § 95(4) provide in pertinent part:

"Civil actions other than for the recovery of real property can only be brought within the following periods, after the cause of action shall have accrued, and not afterwards:
 * * * * * *
Fourth. Within *one (1) year: An action for ... malicious prosecution,....*" [Emphasis supplied.]

49. *Coleman v. Strong*, 105 Okl. 282, 232 P. 378, 379 [1925].

## V

**DEFENDANTS' ARGUMENT THAT THE CHAIN OF CAUSATION WAS BROKEN BY THE SUPPLIER'S PERFECTION OF A JUDGMENT LIEN COULD NOT BE CONSIDERED IN PASSING ON THEIR DEMURRERS**

The trial judge also ruled as a matter of law that there was no causal connection between Reeves' lost opportunity to deed their property to the Bank in lieu of foreclosure and the Supplier's quest for a materialmen's lien that was denied on August 31, 1978. His order states that the May 1, 1978 ruling on the money claim became a judgment lien upon Reeves' premises and that it was this lien—rather than the materialmen's lien claim—which prevented Reeves from satisfying the mortgage debt by deeding the encumbered premises to the Bank. The impression of a judgment lien, the trial court ruled, broke any causal nexus between Reeves' failure to give cloud-free title to the Bank and the August 31, 1978 ruling for Reeves on the lien issue. The court concluded as a matter of law that no act by the defendant, occurring within one year of the filing of Reeves' malicious prosecution suit, could have caused the damage Reeves suffered from the Bank's deficiency judgment.

In reaching this conclusion the trial court apparently took judicial notice that the money claim ruling of May 1, 1978 did constitute a judgment and was perfected as a judgment lien against Reeves' real property.[50] That fact, even if true, was

50. There was no reference in Reeves' petition to the status of the money claim ruling as a judgment. Generally, a decision which settles one remedy or one theory when two are asserted may not rise to the dignity of a judgment within the meaning of 12 O.S.1981 § 681; it would constitute but a "midstream" order. See *Eason Oil Co. v. Howard Engineering*, Okl., 755 P.2d 669, 671 [1988]. We therefore express no opinion here whether the May 1, 1978 decision on the money claim phase of litigation, which reserved for future determination the lien claim issue, was truly a "judgment" within the meaning of § 681. The Court of Appeals in *Reeves I, supra* note 5, neither reached nor settled that question. Inasmuch as *Reeves I* did not discuss the appeal's dismissibility for *prematurity*, Reeves are not now bound to recognize that *Reeves I was* in fact prosecuted from a "judgment". *Mullins v. Ward*, Okl., 712 P.2d 55, 61 [1985]. The settled law of the case operates to

clearly beyond the reference made in Reeves' petition to the extraneous matters of the earlier suit. The court was restricted by the four-corners' rule in passing on the defendants' demurrers and should have limited its search to the petition, any material that may have been physically attached to it[51] and to the judgment roll of the case terminated before the same court, to which *explicit reference* was made in the petition.[52] Because the judgment docket[53] neither constitutes a part of the judgment roll in a suit nor was otherwise referred to in Reeves' petition, the status of the May 1, 1978 ruling as a judgment lien was not within the scope of material, extraneous to Reeves' petition, which the trial judge could consider in passing upon the demurrer. An appellate court cannot reach beyond the framework of those materials of which the trial court could properly take notice.[54] The specific events alleged to have adversely affected Reeves' opportunity to deed their premises to the Bank, free of the Supplier's asserted lien, clearly

tender an issue that was not resolvable on a demurrer.[55] We hence hold the petition was impervious to demurrer on the defendants' legal theory that lack of proximate cause for Reeves' claim to damage from a lost opportunity to avoid foreclosure is apparent from the face of Reeves' petition, viewed in conjunction with that extraneous material to which reference was made in the body of their challenged petition.

## VI

## ERROR, IF ANY, IN SUSTAINING A DEMURRER TO REEVES' SLANDER-OF-TITLE THEORY OF RECOVERY WAS NOT PROPERLY RAISED ON APPEAL

Reeves argue that they plead facts sufficient to support a claim not only for malicious prosecution but also for slander of title. They assert the trial court erred in sustaining demurrers to the petition because all the necessary elements of a slander-of-title action were present.[56]

bar relitigation of *only* those issues that were *actually* settled in *Reeves I. Mobbs v. City of Lehigh, supra* note 46 at 549. In short, nothing can be deemed to have been settled by *Reeves I* as the law for that case which was neither raised nor decided in the appeal.

Even if we were absolutely sure the May 1 ruling was effective as a money judgment, we could not hold as a matter of law that Reeves' reference in their petition to the earlier suit by the Supplier incorporated into that pleading *all* the extraneous material which would be necessary for the trial court to consider before concluding that the May 1 ruling stood in the status of a judgment lien. The trial court's judgment docket is not a constituent component of its judgment roll in a given case and hence could not be noticed for consideration in passing on a demurrer. See discussion *infra* note 53.

51. Physical exhibits attached to the pleading challenged by a demurrer may be considered in passing on the legal sufficiency of that pleading. See *New York Casualty Co. v. Wallace & Tiernan*, 174 Okl. 278, 50 P.2d 176, 179 [1935].

52. See *Morgan v. Whitehead supra* note 17, 165 P.2d at 341; *Corliss v. Davidson & Case Lumber Co., supra* note 17, 84 P.2d at 10; *Schneider v. Decker, supra* note 17, 291 P. at 81 and *James v. Unknown Trustees, Etc., supra* note 17, 220 P.2d at 834.

53. When the May 1, 1978 ruling was made, the judgment docket was kept by the court clerk and was in the form of an index in which the name of the judgment debtor was entered. See

12 O.S.1981 § 25, the statute in effect when the judgment lien was purportedly filed. A judgment did not then become a lien unless its certified copy was filed in the court clerk's office, the docketing fee was paid (28 O.S.Supp. 1975 § 31) and the critical data from the journal entry were entered upon the judgment docket. See 12 O.S.1971 § 706, the version in effect on May 1, 1978; *Smith v. Citizens Nat. Bank in Okmulgee*, 204 Okl. 586, 232 P.2d 618, 621 [1951] and *Farris v. Cannon*, Okl., 649 P.2d 529, 531 [1982]. We cannot assume that even if the May 1, 1978 ruling constituted a judgment, the Supplier paid the fee for docketing that judgment and that its journal entry's abstract was in fact placed on the judgment docket so as to impress a lien of judgment.

54. See *Eckel v. Adair, supra* note 19.

55. See the text of 12 O.S.1981 § 553, *supra* note 36 (now repealed); *Great American Insurance Company v. Watts, supra* note 36; *James v. Unknown Trustees, Etc., supra* note 17 and *Bristow v. Carrigar, supra* note 36, 132 P. at 1109. Reeves argues that they "discharged any money judgment lien which the appellees had perfected by filing a bond in the prior action on appeal" and that this bond "discharged *any* judgment lien the appellees might have had against the Reeves' real property." Reeves reply brief, page 32.

56. Implicit in the trial court's judgment on the defendants' demurrer to the petition is an adverse ruling on *all* theories upon which recov-

Although Reeves may have correctly plead a slander-of-title claim, this issue was neither preserved by the general allegations in their new trial motion [57] nor by specific legal argument at the hearing of that motion. Inasmuch as the trial court was not meaningfully advised that relief was also sought from the adverse ruling on that theory of recovery, Reeves' attempt to resurrect in their brief-in-chief the slander-of-title theory of recovery comes too late. In sum, Reeves' new trial motion does not assert, and the record fails to reveal, that error in rejecting the slander-of-title theory, now being pressed, meets the procedural criteria prescribed by 12 O.S. 1981 § 991(b).[58] We hold that this error must go unaddressed for failure to preserve it either by motion or argument for new trial.

### CONCLUSION

The malicious prosecution petition is impervious to attack by demurrer for failure to state a cause of action. The claim does not facially appear to be barred by limitation. Reeves failed to preserve for review any error in the trial court's denial of their slander-of-title theory of recovery.

The trial court's judgment on the defendants' demurrers is reversed; the cause is remanded for further proceedings not inconsistent with this pronouncement.

LAVENDER, SIMMS, DOOLIN and KAUGER, JJ., concur;

HARGRAVE, C.J., concurs in result;

SUMMERS, J., concurs in part and dissents in part;

HODGES, J., dissents.

SIMMS, Justice, concurring:

I concur with the opinion of the majority insofar as it reverses the trial court's sustention of demurrers and pronounces judgment accordingly. I agree the claim does not appear to be barred by limitations and

ery could be sought. If facts are alleged which support *any* theory of recovery, a general demurrer must be overruled. *Burford v. Territorial Land Co.,* 84 Okl. 102, 204 P. 274, 275 [1922].

that Reeves failed to properly preserve for review, error in denying the claim of slander-of-title.

---

57. See *supra* note 7 and its accompanying text for the allegations of Reeves' motion for new trial.

58. See *supra* note 9 for the pertinent provisions of 12 O.S.1981 § 991(b).